[Sac. No. 37. Department Two.—March 20, 1896.]

## CHARLES H. GILMAN, RESPONDENT, *v.* C. K. McCLATCHY ET AL., APPELLANTS.

LIBEL—PRIVILEGED PUBLICATION—PLEADING.—In an action against a newspaper for libel, the defense that the publication was privileged is one which, to be availed of, must be pleaded.

ID.—REPORT OF PUBLIC PROCEEDING—ARREST FOR RAPE—PUBLICATION OF HEARSAY AS TO DETAILS.—The publication of the details of a damaging statement, gathered by a reporter partly from a prosecuting witness who had arrested a business man upon an affidavit, stating generally that he had committed the crime of rape upon her person, without setting forth any circumstances or details of the alleged offense, and principally from hearsay of neighborhood friends and gossips, is neither a privileged report of any public official proceeding, or of anything said in the course thereof, nor is it in any respect a privileged publication, though made without express malice, in belief of its truth.

ID.—ABSENCE OF EXPRESS MALICE—COMPENSATORY DAMAGES.—Where a libelous publication is false in fact, but is made without express malice, or malice in fact, the plaintiff is not entitled to recover punitive damages; but, in such case, malice in law still remains, and if the publication is a libel *per se*, the plaintiff is entitled to recover compensatory damages.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. A. P. CATLIN, Judge.

The facts are stated in the opinion of the court.

*C. T. Jones, J. W. Armstrong*, and *A. J. Bruner*, for Appellants.

There was no actual or implied malice. (Civ. Code, secs. 45, 47, 48; *Harris* v. *Zanone*, 93 Cal. 59, 70; 1 Wharton's Criminal Law, sec. 106; *Richarte* v. *State*, 5 Tex. Ct. App. 359; *Ex parte Moore*, 30 Ind. 197; *State* v. *Hays*, 23 Mo. 287; *People* v. *Lamb*, 2 Keyes, 360.) The

publication by the defendant was privileged. (Civ. Code, secs. 45, 47, 48, 1907; *Hollis* v. *Meux,* 69 Cal. 625; 58 Am. Rep. 574; *Ball* v. *Rawles,* 93 Cal. 236; 27 Am. St. Rep. 174; *Ackerman* v. *Jones,* 37 N. Y. Super. Ct. 42; *Bissell* v. *Press Pub. Co.,* 62 Hun, 551; *Edsall* v. *Brooks,* 17 Abb. Pr. 227; *Salisbury* v. *Union etc. Co.,* 45 Hun, 120; *Hamilton* v. *Eno,* 81 N. Y. 124; *Moore* v. *Manufacturers' Nat. Bank,* 123 N. Y. 420; *Hemmens* v. *Nelson,* 138 N. Y. 523; *Hastings* v. *Lusk,* 22 Wend. 410; 34 Am. Dec. 330; *Hart* v. *Sun Printing etc. Assn.,* 79 Hun, 358; *Stanley* v. *Webb,* 4 Sand. 21; *Storey* v. *Wallace,* 60 Ill. 51; *Cincinnati Gazette Co.* v. *Timberlake,* 10 Ohio St. 548; 78 Am. Dec. 285; *Rothholz* v. *Dunkle,* 53 N. J. L. 438; 26 Am. St. Rep. 432; *Warner* v. *Press Pub. Co.,* 132 N. Y. 181; *Alabama etc. Ry. Co.* v. *Brooks,* 69 Miss. 168; 30 Am. St. Rep. 528; *Ramsey* v. *Cheek,* 109 N. C. 270; *McBee* v. *Fulton,* 47 Md. 403; 28 Am. Rep. 465; *Lovell Co.* v. *Houghton,* 116 N. Y. 522; *Johns* v. *Press Pub. Co.,* 19 N. Y. Supp. 5; *McDougal* v. *Knight,* L. R. 17 Q. B. Div. 641; *Wason* v. *Walter,* 4 L. R. Q. B. 72.) Whatever every citizen has a right to know, a newspaper has a right to print and publish. (Civ. Code, secs. 1888, 1892, 1904; Code Civ. Proc., sec. 670; *Young* v. *Rosenbaum,* 39 Cal. 653, 654; Pen. Code, secs. 811, 1207, 1426; *Usill* v. *Hales,* L. R. 3 C. P. Div. 319; *Wason* v. *Walter, supra; Lewis* v. *Levy,* 1 El. B. & E. 537; 1 Hilliard on Torts, 336; *Hill* v. *Miles,* 9 N. H. 9; *Briggs* v. *Byrd,* 12 Ired. 377; *Lea* v. *White,* 4 Sneed, 111; *Marsh* v. *Ellsworth,* 2 Sweeny, 589; *Garr* v. *Selden,* 4 N. Y. 91; *Revis* v. *Smith,* 18 Com. B. 126; *Warner* v. *Paine,* 2 Sand. 195; *Reid* v. *McLendon,* 44 Ga. 156; *Hastings* v. *Lusk, supra; Goslin* v. *Cannon,* 1 Harr. 3; *Thomas* v. *Churton,* 2 Best & S. 475; *Bailey* v. *Dean,* 5 Barb. 297; Cooley on Torts, 210, 211, 217–19; 4 Wait's Actions and Defenses, 304; Pollock on Torts, 340, 342–44; *Andrews* v. *Chapman,* 3 Car. & K. 289; 13 Am. & Eng. Ency. of Law, 406, 407, 410, and note; *Atkinson* v. *Detroit Free Press,* 46 Mich. 383; *Kelly* v. *Taintor,* 48 How. Pr. 272; 1 Ogden on Libel and Slander, 248; Starkie on Slander and Libel, 518, 519;

1 Addison on Torts, 198; *Marks* v. *Baker*, 28 Minn. 165; *Smith* v. *Higgins*, 16 Gray, 251; *Gassett* v. *Gilbert*, 6 Gray, 97; *Detroit* v. *Dean*, 106 U. S. 541; *Cowley* v. *Pulsifer*, 137 Mass. 392; 50 Am. Rep. 318; *Barber* v. *St. Louis Dist. Co.*, 3 Mo. App. 377.) The averment that the publication was false and unprivileged is a material averment for plaintiff, and a specific denial puts in issue every material denial. (*Tynan* v. *Walker*, 35 Cal. 645; 95 Am. Dec. 152; *Crowley* v. *City R. R. Co.*, 60 Cal. 628; *Landis* v. *Morrissey*, 69 Cal. 86; *Hawkins* v. *Borland*, 14 Cal. 413; *Bridges* v. *Paige*, 13 Cal. 640.)

*Holl & Dunn*, and *Johnson & Johnson*, for Respondent.

If defendants claim that the libelous matter is privileged, they must set forth facts showing it to be so. (*Wilson* v. *Fitch*, 41 Cal. 369; *Lick* v. *Owen*, 47 Cal. 252; *Dixon* v. *Allen*, 69 Cal. 527; *Goodwin* v. *Daniels*, 7 Allen, 61; *Lothrop* v. *Adams*, 133 Mass. 482; 43 Am. Rep. 528; Townshend on Slander and Libel, sec. 350; *Bell* v. *Park*, 11 I. R. C. L. 413; *Belt* v. *Lawes*, 51 L. J. Q. B. 359; *Langton* v. *Hagerty*, 35 Wis. 150.) The publication was not privileged. (Civ. Code, sec. 27, subd. 4; Townshend on Slander and Libel, 4th ed., 356; *Lewis* v. *Walter*, 4 Barn. & Ald. 613.) If the matter published is both libelous and untrue, malice on the part of the publisher is presumed. (*Wilson* v. *Fitch, supra; McAllister* v. *Detroit Free Press Co.*, 76 Mich. 338; 15 Am. St. Rep. 318; *Bradstreet Co.* v. *Gill*, 72 Tex. 115; 13 Am. St. Rep. 762; *Byam* v. *Collins*, 111 N. Y. 143; 7 Am. St. Rep. 726; *Behee* v. *Missouri Pac. Ry. Co.*, 71 Tex. 424; *Root* v. *King*, 7 Cow. 613; *Dillard* v. *Collins*, 25 Gratt. 343; *Smart* v. *Blanchard*, 42 N. H. 137; *Eviston* v. *Cramer*, 47 Wis. 659; *Jones* v. *Townsend*, 21 Fla. 431; 58 Am. Rep. 676; *King* v. *Patterson*, 49 N. J. L. 417; 60 Am. Rep. 622; *Blumhardt* v. *Rohr*, 70 Md. 328.)

HENSHAW, J.—Appeals from the judgment, and from the order denying a new trial.

Plaintiff's action was for damages resulting from a

libel of and concerning him, published by defendants in their newspaper, the *Evening Bee*.

Defendants admitted the publication and their responsibility therefor, but denied that it was libelous. As an affirmative defense in justification they pleaded that the publication was true. In mitigation of damages they further averred their belief in its truth, and that the publication was made only after a due and careful inquiry which satisfied them of the truth of the matters in the publication contained.

The libel was a publication of what purported to be the narrative of one Stella Truitt of the circumstances of a rape committed upon her by Gilman (this plaintiff) while she was employed as a servant in his house. "Mrs. Truitt," so began the account, "has every appearance of an honest woman, and as she told her story tears rolled down her cheeks."

The findings of the court, all sustained by the evidence, may be quoted at length, as they contain a sufficient recital of all facts necessary to this consideration:

"1. The publication set out in the complaint was false, defamatory, malicious, and unprivileged.

"2. The averment in the defendants' *first* answer by way of defense, 'that said publication was and is true,' was and is untrue.

"3. The averments in defendants' *second* answer by way of defense 'that the facts contained and related in the said publication are true,' are each and all untrue.

"4. The averments in defendants' *third* answer by way of defense, in substance that plaintiff unlawfully and feloniously assaulted one Estella Truitt, with intent to commit the crime of rape upon her, are not proven beyond a reasonable doubt, nor by a preponderance of evidence, and are each and all untrue.

"5. The publication was not made because of any personal ill-will of defendants, or any of them, toward the plaintiff; but it was malicious in the sense which the law imputes, because it was not true, and was defamatory, unprivileged, and injurious.

"6. The defendants at the time of the publication believed it to be true, though it was not true. Such belief was based upon a false story reported to have been related by one Mrs. Estella Truitt, on Saturday morning, August 20th, to neighbors of plaintiff, at a house near his residence. A reporter of the defendants went to said house, and found there the said Mrs. Truitt and three or four other women, with a reporter of another paper, and the chief of police of the city of Sacramento. At this conference the reporter of the defendants obtained his information, as it was given to him in part by Mrs. Truitt, but in the greater part by the other women present. From what he thus heard he wrote the article complained of, except that portion known as the 'head lines,' and submitted it to the defendants, who directed it to be published if a warrant for the arrest of plaintiff, upon the complaint of Mrs. Truitt, should be issued. The plaintiff, having been informed by another reporter of the defendants of the proposed publication, went to the defendants some hours before the publication and declared the story to be false, and protested against its publication because, as he said, it would injure him in his business. The 'head lines' were written by one of the editors or employees of the defendants. The warrant was issued about 3 o'clock P. M., and the publication was made in the third edition of the paper, at about 4 o'clock P. M. The affidavit upon which the warrant was issued was made by Mrs. Truitt, and charged the defendant with having committed the crime of rape upon her person, in the city of Sacramento, on the eleventh day of August, 1892, but did not otherwise state any of the circumstances or details of the alleged offense.

"7. The averment contained in the *fourth* paragraph of the third division of the answer pleaded 'in mitigation for the publication of the article complained of,' that said Estella Truitt 'made the statement in substance as contained in said publication concerning the plaintiff' to the chief of police at his office, is not true,

but it is true that at the residence of Mrs. Kelly, a near neighbor of plaintiff, she did state to said chief of police that said plaintiff had committed a rape upon her.   The averment in said paragraph that said publication 'was, in all its substantial details, correct and true,' is not true."

Under these findings the court awarded plaintiff, who was a merchant carrying on business in Sacramento, the sum of five hundred dollars as compensatory damages.

By far the greater part of the argument of appellants is devoted to an attempt to show that the published matter was privileged, either under subdivision 4 of section 47 of the Civil Code, or under subdivision 3 of the same section.

These subdivisions are as follows:

"SEC. 47. A privileged publication is one made . . . . 3. In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive innocent, or who is requested by the person interested to give the information; 4. By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof.

Here it should be said that the defense or privilege is one which, to be availed of, should be pleaded.   And there was no plea of privilege in this case.   (*Goodwin* v. *Daniels*, 7 Allen, 61; *Langton* v. *Hagerty*, 35 Wis. 150; *Bell* v. *Parke*, 11 I. R. C. L. 413.)

But, passing this objection, we proceed to the consideration of the contentions which form appellants' chief reliance.   The first of these may be disposed of briefly. The publication is not and does not purport to be a report of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof. It is no more nor less than its head lines represent, "a damaging tale against a Sacramento merchant," the materials for which were gathered by the reporter,

as the court found, partly from Mrs. Truitt, but princi-
pally at second-hand from the neighborhood friends
and gossips. Moreover, it was not fair and true, as the
court further finds. It may have been a true report of
what these women told the reporter, but that is not the
truth which will justify a publisher. If A says B is a
thief, and C publishes the statement that A said B was a
thief, in a certain sense this would be the truth, but not
in the sense that the law means. It would constitute
no defense to C, for it would be but a repetition by him
of a slanderous charge. His defense must consist in
showing that in fact B is a thief.

The claim that the publication was privileged under
subdivision 3 of section 47 of the Civil Code rests, as
counsel for appellants phrase it, upon "the fundamental
postulate that in this state whatever every citizen has a
right to know, that a newspaper has a right to print
and publish."

The freedom of the press is most carefully protected
by constitutional safeguards. "Congress shall make no
law abridging the freedom of speech or of the press."
(U. S. Const., Amend., art. I.) "Every citizen may
freely speak, write, and publish his sentiments on all
subjects, being responsible for the abuse of that right;
and no law shall be passed to restrain or abridge the
liberty of speech or of the press." (Cal. Const., art. I,
sec. 8.) Freedom to speak and publish their sentiments
is essential to the enjoyment of liberty by a liberty lov-
ing people. To guard against any possible encroachment
upon this cherished and most valuable prerogative it is
preserved to the people by the organic laws of the land.
The founders of the nation would have the press of the
country subject to no censorship. The evil workings
of such a system were all too visible at that time as at
the present in the European governments in which it
exists. Moreover, it was well considered that in a self-
governing nation absolute freedom for the interchange
of ideas, for instruction and pursuasion, was vital to the
growth, development, and stability of our institutions.

Thus we come to have as part of our heritage such phrases as a "muzzled press," "strangling free speech," a "servile press"—terms at which the very children shrink and shudder. Like O'Connor's epithet, "naufragous villian," without understanding their meaning they recognize them as words of solemn and awful import.

These truths are but platitudes so well are they known and understood. There can be no fear that they will be either overlooked or forgotten. The press itself, should need ever arise, will see that they are not.

But there is an obverse of the picture which is not so often looked at. The growth of the enormous power of the press has brought with it corresponding responsibilities. Do the newspapers wield that power with just regard to the duties which it entails upon them? If they do not, then the wrong is a great one; for a libelous publication in a single issue of a newspaper serves to set wagging the thousand tongues of slander which thereafter can never be silenced, even by the power which provoked them to utterance. By one who lived to experience the evil of which he wrote it is said: "Men's reputations are tender things, and ought to be like Christ's coat, without seam. Who can see worse days than he that, yet living, doth follow the funeral of his reputation?" (Lord Bacon's Charge against Lumsden.)

As the law stands, pecuniary compensation is all that can be recovered for a libel, however damaging it may be. But no one pretends that this compensation reestablishes the injured man or rehabilitates his reputation. The damage done may be and frequently is irreparable.

In this case appellant asks for such an extension of the law as would give immunity to publishers of libels, provided express malice in the publication be absent. In other words, his contention resolves itself to this, that a newspaper is a purveyor of news; the people have the right to read the news; any story gleaned by

a reporter as this was gleaned, and published in the ordinary course of newspaper business without personal malevolence against the victim of the tale, should be held privileged.

In support of this contention there is neither authority, law, nor justice. No point of similarity can be found between this case and those which protect a publisher who in good faith discusses the habits, qualifications, and official conduct of a person holding a public office or presenting himself as a candidate therefor. Even in the latter cases a " line must be drawn between hostile criticism upon public conduct and the imputation of bad motives or criminal offenses, where such motives or offenses cannot be justly and reasonably inferred from the conduct." (*Neeb* v. *Hope*, 111 Pa. St. 145.) But to extend this doctrine, and to seek to apply it, as here, to a charge infamous in its nature and false in its facts against a private individual, would be to put upon the people a greater evil than that which the constitution sought to prevent.

The contention is completely disposed of in this state by the case of *Wilson* v. *Fitch*, 41 Cal. 363. In the same connection the following language of the supreme court of Michigan in *McAllister* v. *Detroit Free Press Co.*, 76 Mich. 338, 15 Am. St. Rep. 318, is apposite:

" It is argued that a newspaper in this day and age of the world, when people are hungry for the news, and almost every person is a newspaper reader, must be allowed some latitude and more privilege than is ordinarily given under the law of libel as it had heretofore been understood. In other words, because the world is thirsting for criminal items, and the libel in a newspaper is more far-reaching and widespreading than it used to be when tales were only spread by the mouth, or through the medium of books or letters, there should be greater immunity to gossip in the newspapers, although the harm to the person injured is infinitely greater than it would be if published otherwise.

" The greater the circulation the greater the wrong,

and the more reason why greater care should be exercised in the publication of personal items. No newspaper has any right to trifle with the reputation of any citizen, or by carelessness or recklessness to injure his good name and fame, or business. And the reporter of a newspaper has no more right to collect the stories on the street, or even to gather information from policemen or magistrates, out of court, about a citizen, and to his detriment, and publish such stories and information as facts in a newspaper, than has a person not connected with a newspaper to whisper from ear to ear the gossip and scandal of the street. If true, such publication or such speaking may be privileged, but, if false, the newspaper, as well as the citizen, must be responsible to anyone who is wronged and damaged thereby.

"It is indignity enough for an honest man to be arrested and put in prison for an offense of which he is innocent, and for which indignity ofttimes he has no redress, without being further subjected to the wrong and outrage of a false publication of the circumstances of such an arrest and imprisonment, looking toward his guilt without remedy. And no sophistry of reasoning, and no excuse of the demand of the public for news, or of the peculiarity and magnitude of newspaper work, can avail to alter the law, except, perhaps, by positive statute, which is doubtful, so as to leave a party thus injured without any recompense for a wrong which can even now, as the law stands, never be adequately compensated to one who loves his reputation better than money."

The court found that the publication was made without express malice or malice in fact. In the absence of such malice, plaintiff would not be entitled to punitive damages, but he has not been awarded any. Malice in law still remained, and the publication being indisputably a libel *per se*, he was entitled to recover compensatory damages. (*Childers* v. *San Jose Mercury Co.*, 105 Cal. 284; 45 Am. St. Rep. 40.) It cannot be said that the award of five hundred dollars was excessive for that

purpose. In *Wilson* v. *Fitch, supra,* this court, without other showing than that here made, upheld an award of seven thousand five hundred dollars as compensatory damages.

The judgment and order appealed from are affirmed.

TEMPLE, J., and McFARLAND, J., concurred.

Hearing in Bank denied.