[Sac. No. 4058. Department One.—August 6, 1928.]

ANGELO MARCHETTI et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

David F. Bush and Frank J. Creede for Appellants.

J. M. Walthall for Respondents.

CURTIS, J.—Action by plaintiffs to recover damages for the death of their minor son, Dan Marchetti. The defendants Duree and Adair were the engineer and fireman, respectively, in charge of the train of the defendant the Southern Pacific Company at the time of the collision which resulted in the death of plaintiffs' son.

The deceased at the time of his death was eighteen years of age, and was then and for some time had been in the employ of W. L. Rodden, who was engaged in farming and stock raising near the city of Oakdale, in the county of Stanislaus. William J. Connors was also in Rodden's employ as his foreman. The deceased was killed in a collision with defendants' train while riding as a passenger in Connors' machine, as the two were traveling along A Street, in said city. At the close of plaintiffs' evidence the court granted a nonsuit, and from the order granting the same the plaintiffs have appealed. The opinion of the trial court, given at the time of granting the nonsuit, is set out in full in the record. It appears therefrom that the order was granted solely upon the ground that the evidence showed that the deceased was guilty of contributory negligence which proximately caused his death. In this we think the court was in error. The evidence bearing upon this point was undisputed. The deceased was riding with Connors under the latter's direction, and had no control whatever over the operation of the automobile in which they were riding. There can be no question of Connors' negligence in driving the machine on to the railroad crossing without taking the proper precautions to observe whether a train was or was not approaching. The negligence of the driver of a machine, however, cannot be imputed to a passenger therein in the absence of any evidence showing that the latter exercised some control over the driver or that he possessed the power to supervise or direct the manner in which the automobile should be operated (*Bryant* v. *Pacific Electric Ry. Co.*, 174 Cal. 737 [164 Pac. 385]; *Irwin* v.

*Golden State Auto Tour Corp.*, 178 Cal. 10 [171 Pac. 1059];
*Nichols* v. *Pacific Electric Ry. Co.*, 178 Cal. 630 [174 Pac. 319]). In this case there was no such evidence. The deceased, as we have before stated, was simply going with Connors, in the latter's machine, for the purpose of attending to some matter of business regarding their employer's property. Connors was the foreman of his employer, and the deceased was subject to his orders. Connors had entire control of the machine and was operating the same without any assistance or direction on the part of the deceased. If the deceased, therefore, was guilty of contributory negligence it must have been by some act either of commission or omission on his part which of itself constituted contributory negligence. There was no evidence in the case tending to show any such act of negligence on the part of the deceased. All the witnesses agree that the deceased was simply sitting in the machine at the side of Connors and that he was looking straight ahead of him while they were traveling along A Street and just before their machine collided with the defendants' train. No witness testified, nor is there any evidence from which it may be inferred, that the deceased exercised or attempted to exercise any control or direction over the operation of the automobile by Connors. Respondents argue, however, that the evidence shows that as the deceased was looking straight ahead he could not have been looking to his left and along the railroad track on which the train was approaching, and that this failure of the deceased to look for the approaching train constituted contributory negligence on his part, which would defeat a recovery in this action. This argument, we think, is satisfactorily and completely answered by the following statement of the law on this subject found in 3 Cal. Jur., pages 853 and 854:

"A passenger in a motor vehicle approaching a railway crossing is under no legal obligation to warn the driver, either of the presence of the tracks or of an approaching train, the view being unobstructed and the driver reasonably competent and vigilant. And while it is the passenger's duty to look and listen, it is not his duty to stop for a successful observation, since he has no authority over the driver, but is wholly subject to the latter's action. The passenger has a right to suppose that the driver, on

approaching a railway crossing with which he is familiar, will exercise due care for the protection and safety of his passengers, and that even when so near the crossing as to be in apparent danger of collision with an oncoming train he will or may take some action which will avert an accident. Nor is the passenger obliged, even when the danger of collision becomes suddenly imminent, to displace the driver, seize the operating levers and endeavor to avoid the impending catastrophe. Nevertheless, it has been said that the passenger must look out for himself, and may not, in a place of danger, as on approaching a railway crossing, rely blindly on the driver. But a passenger in a machine operated by another cannot be said as a matter of law to have been negligent in not calling the chauffeur's attention to the danger of a collision.''

Respondents contend that under the authority of *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748 [134 Pac. 709], and *Parmenter* v. *McDougall*, 172 Cal. 306 [156 Pac. 460], that a passenger in a vehicle operated by another is bound to exercise ordinary care for his own safety, and that if such passenger is aware that the operator is carelessly rushing into danger it may be incumbent upon him to take steps for his safety. These cases undoubtedly contain a correct statement of the law upon the subject of a passenger's duty in case of known danger. They have little or no application to the present case, for the reason that it does not appear that there was anything that could have been done by the deceased which would have averted the collision. Had he looked in the direction the train was approaching he could not, owing to the obstructions between him and the railroad right of way, have seen it until it had almost reached the street upon which he was traveling. Furthermore, had he seen it in time to have warned the driver there is no assurance that the latter could have brought his machine to a stop before reaching the railroad track. There is a presumption that the deceased used due care and for his protection did all that reasonably was required of him. There is absolutely no evidence in this case to overcome or dispel this presumption. It was error, therefore, for the trial court to have granted defendants' motion for a nonsuit on the ground that the evidence on the part of plain-

tiffs showed that the deceased was guilty of contributory negligence.

Respondents contend, however, that notwithstanding such error the order should be sustained on the ground that there was no evidence that the defendants were negligent in the operation of their train at the time of the collision. Ordinarily negligence is one of fact to be determined by the jury (*Runkle* v. *Southern Pacific Milling Co.*, 184 Cal. 714 [16 A. L. R. 275, 195 Pac. 398]; *Lamport* v. *Southern Pacific Co.*, 183 Cal. 326 [191 Pac. 527]). "A motion for nonsuit admits the truth of the plaintiff's evidence and upon such motion the evidence should be interpreted most strongly against the defendant. If there is any evidence tending to sustain the plaintiff's action, or if the evidence is conflicting, a nonsuit should be denied without passing upon the sufficiency of the evidence" (19 Cal. Jur. 740).

In the present action there was evidence tending to show that the crossing made by the railroad right of way and A Street was dangerous to those traveling along A Street. While the defendant company had placed the ordinary warning signs found at railroad crossings at the crossing where the collision happened, it had not equipped the same with any automatic signal, although some two years before, and probably just after A Street was paved, the city authorities had requested the company to do so. It was held in *Green* v. *Southern Pacific Co.*, 53 Cal. App. 194, 202 [199 Pac. 1059, 1062], that the law imposed "upon a railroad company the duty to use reasonable care, corresponding to the circumstances constituting the probable danger, to avoid injury to persons lawfully traveling upon the public highway crossed by the company's tracks and trains. It then becomes a question for the jury to decide whether or not it was negligence for the company to run its cars across the highway without providing a flagman or some means of warning to travelers at the place of crossing. And where the facts in evidence prove that usually or frequently there are obstructions which interfere with the opportunity to see moving trains while travelers on the highway are approaching a much-traveled crossing, it cannot be held that as a matter of law it is not negligence to run trains there without warning signals other than those usually given by engines and cars." The evidence in this

case shows that A Street is the main traveled highway for persons entering the city of Oakdale from the north by automobiles, and that there is a considerable amount of travel thereon. On the lot of land located along the northerly line of A Street and extending to the railroad right of way there was, on the day of the collision, a grove of large olive trees, and near the southwest corner of this lot and about sixty feet east of the center line of the right of way is a shed or barn. These trees and building obstruct the view of persons traveling westerly on A street to such an extent that they are unable to observe the railroad track north of the street until they pass by the barn or building on said lot. These obstructions also prevent those operating trains on said track and coming from the north from observing persons or objects on A Street east of the barn or building until they are practically within the crossing. This was the evidence given by the engineer. The evidence was also in conflict as to the extent and number of warnings given by the railroad crew as they approached this crossing. There were two eye-witnesses to the accident, Mr. and Mrs. White. Mr. White testified that the only whistle he heard was given when the train was two or three hundred feet from the crossing. He testified that he saw before this whistle was sounded ''the exhaust such a whistle would make,'' but did not hear any sound of the whistle at that time. He also said he saw the bell on the engine moving, but could not hear any sound, as the engine of his automobile was running. Mrs. White, who was in the automobile with her husband, said that she heard no sound either of the whistle or the bell, but that she was under great excitement at the time as she saw the two men, the deceased and Connors, approaching the railroad crossing on A Street from the east at the same time the train was approaching the crossing from the north. Mr. and Mrs. White were traveling easterly on A Street and when they saw the train coming from the north they stopped their automobile some fifty or sixty feet west of the track and remained there until after the collision. The only other witness, besides the two trainmen, who testified upon this subject, was L. D. Hardwick, who kept a filling station on A Street, about three hundred feet east of the right of way. He said he heard no bell and only one sound

from the whistle and immediately afterward he heard the crash. While the two trainmen, who were called for cross-examination under section 2055 of the Code of Civil Procedure, testified that they gave the required signals, both by ringing the bell and sounding the whistle, the plaintiffs, especially upon a motion for a nonsuit, would not be concluded by their evidence, it being the duty of the court upon a motion for a nonsuit to accept the evidence most favorable to the plaintiffs.

A third consideration bearing upon the negligence was the evidence in regard to the speed the train was traveling at the time and just before it entered the crossing. While the witnesses generally gave the speed at about twenty-five miles per hour, which might or might not be considered by the jury as a negligent rate of speed under all the facts and circumstances in evidence in the case, one witness, Mrs. White, testified that it appeared to her that the train was gaining on the car in which Connors and the deceased were traveling, and that at the time Mr. White stopped his car, the distance the locomotive was from the crossing "was as much again" as the distance the Connors' machine was from the crossing; that "the locomotive gained on the automobile at every instant. The locomotive entirely crossed the crossing before it collided with the machine." The evidence, without much, if any, conflict, was that the automobile was traveling, at the time Mrs. White observed it, at twenty-five miles per hour. The inference might be reasonably drawn from her testimony that the locomotive was traveling at a speed of fifty miles per hour at the time it entered the crossing and at the time of the collision. Taking this evidence as a whole, we do not believe the court would have been justified in holding that, as a matter of law, it failed to show that the defendants were negligent in the operation of the train across A Street. It at least tended to show negligence on defendants' part, which proximately caused the injury to deceased, and this is all that is required, when considered upon a motion for a nonsuit.

The order granting defendants' motion for a nonsuit is reversed.

Tyler, J., *pro tem.*, and Preston, J., concurred.