[Sac. No. 6232. In Bank. Mar. 21, 1952.]

W. F. CONNER et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Appellants.

Glenn D. Newton for Appellants.

Alfred E. Frazier and Duard F. Geis for Respondents.

SCHAUER, J.—Defendants appeal from an order granting plaintiffs' motion for new trial in an action for wrongful death. The motion was granted for asserted error in instructions. We have concluded that the jury were correctly instructed. It necessarily follows that the trial court's order setting aside the verdict and granting a new trial cannot be sustained.

Bill Conner, plaintiffs' son, was killed when defendants' train struck an automobile which was being steered by Conner while in tow of a pickup truck driven by Richard Benson. Benson drove upgrade at a speed of about five miles an hour across defendants' tracks and did not see the train until it was too late for him to accelerate and pull Conner's car off the tracks. Visibility was good and both drivers were familiar with the crossing. There is evidence from which the jury could, and its verdict implies that it did, find that, had Conner kept a lookout for his own safety, he would have seen the train[1] and could have signaled to Benson and thereby caused the latter to avoid the accident or he could have escaped from the towed car before it was struck; also, the evidence would support a finding that Conner by seasonably applying his brakes after he was in a position to see the oncoming train could have stopped both vehicles before even the towing car went upon the crossing.

[1]The track to the north, from which direction the train approached, was straight and the view unobstructed for at least a mile from the point, approximately 60 feet from the tracks, where Benson slowed to a speed of about five miles per hour preparatory to crossing the tracks.

The trial court instructed the jury that Benson was guilty of negligence as a matter of law.[2] ■ The questions whether the railroad was negligent in the circumstances, whether any such negligence was a proximate cause of the accident, and whether Conner (the deceased) was guilty of negligence which proximately contributed to cause the accident, were left to the jury. This (at least as against plaintiff) was proper, and the instructions upon which such issues were submitted were not erroneous.

The jury were told that "A traveler approaching a railway crossing with the intent of crossing thereover on a public highway is required, if he does not stop, to approach the tracks with his vehicle under control so as not to render ineffective other precautions required of him, such as looking and listening for the approach of a train, and so that he may be able to stop or turn aside while still in a position of safety upon ascertaining that a train is approaching which might endanger his passage over said track"; and that he must yield the right of way to an approaching train.

■ The principal argument of the plaintiffs is to the effect that no instruction expressly directed the attention of the jury to the fact—or instructed them that as a matter of law it is a fact—that one guiding a towed vehicle has less control over its progress than does the driver of the towing vehicle. Whether, under the circumstances here, such an instruction on that proposition of fact would have been proper is beside the point; no such instruction was requested and the court was not bound to so instruct of its own motion. Moreover, the fact is obvious without an instruction declaring it. ■ As to the applicable law the jury were properly informed that they must determine whether deceased "exercised the care and vigilance for his own safety which the circumstances required"; that negligence is "always a relative question—relative to the circumstances of the time, of the place, and of the person or persons"; that "The person in charge of the towed vehicle is bound to exercise reasonable care for his own safety in steering or operating it. Whether proper care has been exercised is a matter to be determined according to the facts of the particular

<hr>

[2]Because of our conclusion that there is no error adverse to plaintiffs in the instructions we do not need to consider whether upon undisputed evidence decedent, like Benson, was as a matter of law guilty of negligence which proximately contributed to his death.

case.'' The above quoted instructions correctly and adequately informed the jury as to the duty of care of one in the position of deceased. The record discloses no basis for a determination that the jury did not follow such instructions in arriving at their verdict.

█ The court appears to have granted the new trial because it decided that the jury were misled by its instructions, which, it concluded, did not sufficiently emphasize the factual proposition that Conner had less opportunity to control the vehicles than did Benson. But the instructions are not erroneous in law or misleading in fact. They correctly informed the jury that Conner should have exercised reasonable care in the circumstances in which he was, and left it to the jury to decide whether he could and should have done anything more than let himself be pulled slowly into the path of the approaching train. █ Whether instructions which are actually erroneous are cured by other, correct instructions or are prejudicial is a question for the discretion of the trial court (*Fennessey* v. *Pacific Gas & Elec. Co.* (1938), 10 Cal.2d 538, 544 [76 P.2d 104]) but where, as here, the instructions are correct, there is no basis for the exercise of discretion, and no legal ground, in that respect, on which a new trial may be granted (*Parker* v. *Womack* (1951), 37 Cal.2d 116, 123 [230 P.2d 823]). █ The inquiry as to whether instructions are erroneous presents purely a question of law (*Dodds* v. *Gifford* (1932), 127 Cal.App. 629, 634 [16 P.2d 279]; *Markham* v. *Hancock Oil Co.* (1934), 2 Cal.App.2d 392, 395 [37 P.2d 1087]) and if it appears on appeal that a trial court in granting a new trial based its order exclusively upon an erroneous concept of legal principles applicable to the cause, its order will be reversed (*Estate of Baird* (1926), 198 Cal. 490, 507 [246 P. 324]).

Plaintiffs rely on the statement, quoted with approval from 3 Cal.Jur. 854, in *Marchetti* v. *Southern Pac. Co.* (1928), 204 Cal. 679, 683 [269 P. 529], that ''a passenger in a machine operated by another cannot be said as a matter of law to have been negligent in not calling the chauffeur's attention to the danger of a collision.'' The statement has no application here. Conner was not a passenger and the question of his contributory negligence was one of fact. █ In *Fairman* v. *Mors* (1942), 55 Cal.App.2d 216, 219-220 [130 P.2d 448], it was said that ''One sitting behind a steering wheel of a towed car is utterly helpless so far as directing the course or conduct of such car.'' This state-

ment, in its application to the facts of this case, obviously is incorrect. The record here shows that Conner's car was equipped with steering gear, brakes and horn. There is evidence that before the towing and towed vehicles went upon the tracks they were going so slowly and up such a grade that Conner, by applying his brakes, could have stopped both of them in safety.[3] Furthermore, he was not as a matter of law "utterly helpless" to alter the course of the vehicles. (See *Farrar* v. *Whipple* (1924), 65 Cal.App. 123, 126 [223 P. 80], affirming judgment against one whose negligent steering of a towed vehicle resulted in injury to others.) ■ The limited ability of one at the wheel of a towed vehicle to control its travel would not justify his depending entirely, as might (under some circumstances) a mere passenger, on the vigilance of the driver of the towing car. Certainly he would have the duty of exercising ordinary care in watching for traffic, railway trains, etc., in the control of his own car to a reasonable extent, in sounding his horn to warn the driver of the towing vehicle if such action appeared reasonably necessary, and, under the slow speed conditions shown here, in leaving the towed car if reasonably necessary.

Since the jury, correctly instructed, impliedly found upon sufficient evidence that Conner failed to exercise the reasonable care required of one in his position and that his negligence proximately contributed to cause his death, the granting of a new trial upon the ground designated was error.

For the reasons above stated, the order is reversed.

Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

In a whole series of instructions the jury was told that the pilot of a car being towed must do all that an operator of a car must do and more to escape the charge of contributory negligence when he is being towed across a grade

---

[3] "THE COURT [to witness Benson]: . . . The question, of course, is you towing his car and you not putting your brakes on, and he putting it on, I presume, what distance could he have stopped his car, which also means stopping yours, too? A. I guess he could have stopped in six or seven feet.

"Mr. NEWTON [defendants' counsel]: And he didn't give you any signal to stop as you were going up the grade, did he? A. No. . . .

"Q. There is a gradual rise as you leave the highway to approach the railroad tracks? A. About a four foot rise from the highway."

railroad crossing. The jury was told that more care was required than of the operator of the towing car, because, as will later be shown, he was expected to exercise the highest degree of care. Nevertheless the majority holds that the instructions were not erroneous and therefore the trial court was wrong in granting a new trial after verdict for defendant railroad company. It must be remembered that in this case there are three persons involved. The railroad employees operating the train, Benson, who was driving the car which was doing the towing, and the deceased, who was in the towed car. Benson is *not* a party defendant or plaintiff and any negligence of his is *not* imputed to the deceased. Hence, the only instructions pertinent would be those dealing with the situation as between the railroad crew and the deceased, the occupant of the towed car.

The trial court gave the following instruction (quoted in the majority opinion): ''A traveler approaching a railway crossing with the intent of crossing thereover on a public highway is required, *if he does not stop,* to approach the tracks with his vehicle *under control* so as not to render ineffective other precautions required of him, such as *looking and listening* for the approach of a train, and *so that he may be able to stop or turn aside* while still in a position of safety upon ascertaining that a train is approaching which might endanger his passage over said track.'' (Italics added.) (Instruction No. 24.) In addition, the jury was advised: ''The railway train has the right of way and in their operation of a train toward and over a crossing, the trainmen have the right to assume that every person will approach the crossing exercising ordinary care to avoid collision, and will look and listen for an approaching train and stop, if necessary, before he or she crosses to let the train go by.'' (Instruction No. 17.) ''It is the rule in respect of the right-of-way at a railroad crossing that a vehicle or person approaching a steam railroad crossing, with the intention of going over the tracks, is under the duty to *yield the right-of-way* at that crossing to any railroad train which may be approaching the crossing.'' (Italics added.) (Instruction No. 18.) ''You are instructed that in approaching a railroad crossing, a continuous duty is imposed upon the driver of an automobile to maintain a lookout in the directions from which danger is anticipated.'' (Instruction No. 19.) ''The tracks of a railroad, such as that involved in this case, are in themselves a warning of

danger. The view of the tracks and intersection in this case was unobstructed and under these conditions before one drives a vehicle into the space which would be occupied by a train if it were to pass over such tracks, it is his duty to use every reasonable opportunity to look and listen for the approach of train, engine or car on the tracks. What is included in the term 'every reasonable opportunity' depends on all the surrounding circumstances, as they would be met and viewed by a person of ordinary prudence, if he occupied the same position as the one whose conduct is in question.'' (Instruction No. 23.) Summarized, those instructions informed the jury that plaintiff was in *exactly* the same position as the driver of a car, in full control thereof, approaching a railroad crossing and must do all the things such a person could do; that the train crew may assume he will look, listen, and if necessary stop; that he must yield the right of way to the train, and maintain a continuous lookout; that by implication he must stop, approach the crossing with the vehicle *under control* and be able to stop or turn aside.

The jury was told in effect that the mere fact alone that the car is being towed constitutes contributory negligence, because the things the deceased was required to do could be done only by someone who was operating the towing car.

It should be obvious that when a person is in control of a car being towed he is practically helpless. He cannot stop or swerve and thus cannot yield the right of way. To expect him to look and listen is also unreasonable. All his attention must be focused on the towing operation if he is to avoid running into the towing car, fouling the tow line, or having his car upset. Certainly, he is in a more helpless position than a passenger in a car. While a passenger may not have a brake at his foot or a steering wheel in his hand, he can communicate with the driver and inform him of approaching danger. In the instant case to require the deceased to put on the brake (assuming that would be safe) would demand making the choice between his life and that of the driver of the towing car, for otherwise he would stop the towing car in the path of the train. If he attempted to brake his car the result might well be to stall the towing car. It is asserted that deceased could have blown his horn, but there is no showing that the horn was operating. In any event the driver of the towing car would not have known of the reason for blowing the horn.

For the foregoing reasons, judges taking a common sense view with regard to the operation of a towed car have commented: "One sitting behind a steering wheel of a towed car is utterly helpless so far as directing the course or conduct of such car. He is not the driver either in the statutory sense or in any sense. No amount of turning of the steering wheel by him will alter its course." (*Fairman* v. *Mors*, 55 Cal.App.2d 216, 219-220 [130 P.2d 448].)

The effect of the foregoing clearly erroneous instructions was magnified by another faulty instruction which in effect told the jury that even slight negligence on decedent's part would bar recovery; that is to say it was advised that he was required to use extraordinary care. The instruction reads: "Contributory negligence is such an act or omission of a person killed or injured, amounting to want of ordinary care in the circumstances of the case, as concurring or cooperation with a negligent act of a defendant, was a proximate cause of the death complained of. If, in this case, there was any conduct on the part of the person who was killed, amounting to negligence, *no matter how slight,* and if such negligence in any degree proximately contributed to the injury, *no recovery can be had,* and it will be your duty to return a verdict in favor of the defendants." (Italics added.) (Instruction No. 7.) It is settled that such an instruction is faulty because it tells the jury that only slight contributory negligence will bar recovery when it is the degree of contribution that may be slight. It is error to instruct the jury that contributory negligence, no matter how slight, will bar recovery by plaintiff, because it is in effect saying that contributory negligence is not ordinary negligence, which is the doing of something or the failure to do something which a reasonably prudent person would or would not have done under like circumstances. (*Clark* v. *State of California,* 99 Cal.App.2d 616 [222 P.2d 300]; *Strong* v. *Sacramento & P. R. R. Co.,* 61 Cal. 326; *Polk* v. *City of Los Angeles,* 26 Cal.2d 519 [159 P.2d 931]; *Robinson* v. *Western Pac. R. R. Co.,* 48 Cal. 409; *Rush* v. *Lagomarsino,* 196 Cal. 308 [237 P. 1066]; *Morgan* v. *Los Angeles R. & G. Corp.,* 105 Cal.App. 224 [287 P. 152].) In *Clark* v. *State of California, supra,* the court said: "But appellant more justly complains of a group of instructions given by the court at defendants' request which as to the point now under consideration may be summarized as follows: The court told

the jury that if the decedent was guilty of contributory negligence, no matter how slight, which proximately contributed to the accident their verdict must be for the defendants. Again the court said that in determining whether or not decedent was guilty of contributory negligence 'if you believe from the evidence that she was guilty of the slightest degree of negligence . . . and that such negligence proximately contributed to the accident and her death' the verdict must be for the defendants. As said by the Supreme Court of California in *Strong* v. *Sacramento & P. R. R. Co.*, 61 Cal. 326, 328: 'The rule is, not that any degree of negligence, however slight, which directly concurs in producing the injury will prevent a recovery; but, if the negligence of the plaintiff, amounting to the absence of ordinary care, shall contribute proximately, in any degree, to the injury, the plaintiff shall not recover.' . . .

"While the lawyer and also the layman recognize that there are differing degrees of negligence, here ordinary negligence was the only degree of negligence involved, and to permit the jury to continue in their mistaken belief that they were concerned with the degree of negligence as distinguished from the degree of proximate contribution of that negligence to the happening of the accident and the infliction of the injury, was detrimental to plaintiff's interests, to say the least."

It is conceded by the majority that where instructions are erroneous the question of prejudice and whether bad instructions are cured by others is for the discretion of the trial court on motion for a new trial. (*Fennessey* v. *Pacific Gas & Elec. Co.*, 10 Cal.2d 538 [76 P.2d 104]; *Mathers* v. *County of Riverside*, 22 Cal.2d 781 [141 P.2d 419]; *Brignoli* v. *Seaboard Transp. Co.*, 29 Cal.2d 782 [178 P.2d 445].)

That the jury was misled in the instant case is clear. I would, therefore, affirm the order granting a new trial.

Respondents' petition for a rehearing was denied April 17, 1952. Gibson, C. J., and Carter, J., were of the opinion that the petition should be granted.