[Civ. No. 26063.   Second Dist., Div. Two.   Mar. 29, 1963.]

JAMES J. ARDITTO, Plaintiff and Respondent, v. GEORGE PUTNAM, Defendant and Appellant.

[Civ. No. 26131.   Second Dist., Div. Two.   Mar. 29, 1963.]

NOAH DIETRICH, Plaintiff and Respondent, v. GEORGE PUTNAM, Defendant and Appellant.

(Consolidated Cases.)

634

Phill Silver for Defendant and Appellant.

Crowley & Rhoden and Arthur J. Crowley for Plaintiffs and Respondents.

ASHBURN, J.—These two cases were consolidated for purpose of trial, tried together and are presented here upon a single reporter's transcript. Each is an action for slander of plaintiff through a news telecast delivered by defendant Putnam on January 24, 1958, pursuant to an alleged conspiracy with Miles Laboratories, Bond Stores (his sponsors) and Bruce Allen, all of whom were joined as defendants. The Arditto complaint alleges four causes of action and Dietrich's two causes. Before trial defendants Miles Laboratories, Bond Stores and Bruce Allen paid to Arditto and Dietrich $21,-513.15 for a release of said defendants from all claims based upon the first and second counts of each complaint. The cause proceeded to trial against defendant Putnam only. A jury found for him upon the first, third and fourth causes of action in the *Arditto* case (the second count having been dismissed by plaintiff), and upon the first count of the *Dietrich* case. The trial judge granted plaintiff a new trial upon the first cause of action in each case upon the grounds of insufficiency of the evidence to justify the verdict and that it is against law; he denied said motion as to other counts. From this order granting new trial as to the first count of each complaint defendant appeals. The other causes of action thus drop out of sight.

Plaintiff Arditto is an attorney practicing in the Los Angeles area and was at the time of the alleged slander vice president, director and secretary of Los Angeles Harbor Development Company. Plaintiff Dietrich is chairman of the board of directors of Houston-Fearless Corporation and also serves as consultant to some other companies; prior to 1956 he was executive vice president of Hughes Enterprises.

On January 23, 1958, the subcommittee on tidelands of the State Assembly Interim Committee on Judiciary, whose chairman was defendant Bruce F. Allen, commenced hearings in Los Angeles upon the "leasing practices followed by the City of Los Angeles relating to tidelands and other lands as regards production of oil," and "particularly with regard to the leases coming under scrutiny this morning because of

various stories that have been circulated, whether or not there has been influence peddling taking place in the granting of these leases.'' On the next evening, January 24, at 6:45 p.m., defendant Putnam, a television news reporter, gave a telecast over station KTTV in Los Angeles, the full text of which is set forth in the footnote.[1]

Each complaint charges that the following portions are slanderous: ''Bruce Allen repeatedly states it looks as though

[1]''Putnam: 'Today Chairman Bruce Allen of the Assembly Tidelands Sub-committee charges influence peddling as the probe of this city's awards of tidelands oil leases comes to a close. Today's witnesses include Lawrence Shuey of the Texas Company, who testifies his company received an invitation to bid on harbor oil leases only four and a half days before the bidding closed. At the same time he indicates the Arditto, Dietrich, Waters and Standard Oil bid already was accepted.

'' 'The next witness, Albert S. Baptie, a petroleum engineer, who testifies the January 2nd agenda for the Los Angeles City Harbor Commission had absolutely nothing in it concerning bids, that he received an invitation to bid in the midst of the holidays, December 26th, with the deadline January 2nd. Ralph Cormany, the manager of land for Hancock Oil, also received an invitation to bid around December 26th of 1956. Says he was unable to talk with any member from January 2nd to January 9th of 1957. He says the few days allowed by the commission is without precedent. He says never less than 30 days are allowed for such bids.

'' 'Bernard J. Coughlin, general manager of the L.A. Harbor Department, brands as completely untrue and false the testimony of Lawrence Shuey of the Texas Company. Coughlin admits the Harbor Commission paid for the Stanley-Stolz report, then completely ignored the report and its recommendations in awarding contracts. He also indicates further clarification and negotiations with Arditto and company after the close of bidding on January 2nd.

'' 'Well, the name of Edwin J. Pauley, independent oil producer, is frequently mentioned in the proceedings, in association with Arditto, Dietrich, Waters and Standard Oil on harbor leases. An associate of Mr. Pauley's, Barton Hutchins, takes the stand. He states Arditto, Dietrich and Waters would get their percentage only if a negotiated harbor lease were consummated, Arditto and company to be paid only if it were a negotiated bid. And here's Mr. Hutchins statement as he tells of a warning he gave to Arditto and company.'

''Allen: 'But maybe all they had to sell, for all you know, was some way of getting a better rate?'

''Hutchins: 'We weren't concerned with that at all. As a matter of fact we told them—Mr. Pauley told them and I told them—that we were going to have no shenanigans with—at all.'

''Putnam: 'No shenanigans. Chairman Bruce Allen repeatedly states it looks as though Arditto, Dietrich and Waters were paid for political influence in gaining oil leases, that they peddled their influence. And he further states it's indicated that James Arditto, Noah Dietrich and Frank Waters did much more than just leg work. Here is Chairman Allen.'

''Newsman: 'Bruce Allen, do you feel the City of Los Angeles is getting the best possible return on its oil leases?'

''Allen: 'No, I do not. I think the testimony this morning from several representatives of major oil companies indicates very clearly that they were shut out on the offering of these tidelands for oil leases. They wanted to bid, to make very substantial offers that would produce favor-

Arditto, Dietrich and Waters were paid for political influence in gaining oil leases, that they peddled their influence. The committee concludes for the moment satisfied that they have uncovered influence peddling, shady deals and preferential treatment in their investigation of our city's awards of tideland oil leases, property that belongs to the citizens of Los Angeles.'' Defendant admitted making the said statements, denied malice and other allegations of the complaints and advanced these affirmative defenses: privileged communication under section 47 subdivision 3, Civil Code; fair and true

able returns to the city. They were not permitted to do so. And it's just not possible to shut out any substantial segment of the oil industry in setting up these oil leases and get an adequate return.'

''Newsman: 'Would you say that a contrived scheme could be involved in this?'

''Allen: 'I think we have received evidence that indicates that the lease on the inner harbor area, for example, on which a lease at one time was approved to Standard, Kadane and Sons, Arditto, Waters and Dietrich, was fixed ahead of time and before the invitations or proposals were sent out to other oil companies, that the whole thing had been cut and dried and set. We had testimony to that effect this morning.'

''Putnam: 'Fixed ahead of time, all set, cut and dried. The issue at stake: what did Arditto, Dietrich, Waters and company do for their share in the oil lease. Arditto admits his corporation has no tangible assets, no minutes, no disbursements, no bond, just a willingness to do business. And then to the witness stand comes Attorney Frank J. Waters, law partner of Arditto, who says he got into this thing after a phone call from Asa Call; Waters a former member of the Harbor Commission.'

''Allen: '. . . not required to advance any money.'

''Waters: 'Well, there's nothing strange about that, Mr. Allen.'

''Allen: 'I didn't say there was. I wanted to know what you did to receive this interest?'

''Waters: 'Well, we—the Kadane's came into our office and we prepared—Mr. Arditto prepared documents, letters, statements. I'm sure the office did a great deal of legal research.'

''Allen: 'Is that what you got the interest for?'

''Waters: 'We wanted that in lieu of a fee certainly, yes.'

''Allen: 'That's the reason that Kadane and Sons gave you a third working interest.'

''Waters: 'We insisted on an interest, we wanted an interest. We didn't want any cash fee. We would just lose it all by—or a great deal of it by the high income tax rates.'

''Allen: 'Do you remember approximately the time when you reached this—started discussing this with Kadane and Sons?'

''Waters: 'No, I don't, no, gee, you'll have to ask Mr. Arditto—I just don't remember. There are so many dates in this. . . .'

''Putnam: 'So many dates and so many faulty memories. The committee concludes for the moment satisfied that they have uncovered influence peddling, shady deals and preferential treatment in their investigation of our city's awards of tidelands oil leases, property that belongs to the citizens of Los Angeles.

'' 'I'll bring you other top news in just a moment.' ''

report of a legislative proceeding; fair and true report of the proceedings of a public meeting; and fair and true report of material and matter constituting news items for the benefit of the public. After a long trial the jury, as above stated, found for defendant but the trial judge granted a new trial as to count I of each complaint upon the ground of insufficiency of the evidence.

In support of the appeal from that order defendant's counsel advances the argument that "[i]f it appears on appeal that a trial court in granting a new trial based its order exclusively upon an erroneous concept of legal principles applicable to the cause, its order will be reversed," citing *Rosenberg* v. *Wittenborn,* 178 Cal.App.2d 846 [p. 851] [3 Cal.Rptr. 459], *Estate of Baird,* 198 Cal. 490, 507 [246 P. 324], and *Conner* v. *Southern Pac. Co.,* 38 Cal.2d 633, 637 [241 P.2d 535]. The *Baird* opinion says, at page 507: "[W]e are not unmindful of the well established and salutary rule which clothes the trial court with broad discretionary powers in the consideration and determination of motions of this character. While these powers are broad and extensive, they are not unlimited and their exercise is controlled by other rules of procedure equally well settled and beneficial in their application. One of these last mentioned rules is that where the trial court errs in the application of the legal principles applicable to a cause in granting a motion for a new trial thereof such action will be corrected on appeal just as readily as if the motion had been overruled." *Conner* v. *Southern Pac. Co.,* 38 Cal.2d 633, 637 [241 P.2d 535], phrases the rule thus: "The inquiry as to whether instructions are erroneous presents purely a question of law (*Dodds* v. *Gifford* (1932) 127 Cal.App. 629, 634 [16 P.2d 279]; *Markham* v. *Hancock Oil Co.* (1934) 2 Cal. App.2d 392, 395 [37 P.2d 1087]) and if it appears on appeal that a trial court in granting a new trial based its order *exclusively* upon an erroneous concept of legal principles applicable to the cause, its order will be reversed." (Italics added.)

Counsel next says, and correctly, that where the record contains *no substantial evidence to support a judgment in favor of the party whose motion for new trial has been granted,* the order will be reversed, citing *Martin* v. *Smith,* 103 Cal.App.2d 894, 897 [230 P.2d 679], *Henderson* v. *Braden,* 35 Cal.App.2d 88, 91 [94 P.2d 625], *Henningsen* v. *Howard,* 117 Cal.App.2d 352, 355 [255 P.2d 837], *Ellis* v. *City of Los Angeles,* 167 Cal.App.2d 180 [334 P.2d 37], and *Post* v.

*Camino Del Properties, Inc.*, 173 Cal.App.2d 446, 453 [343 P.2d 294].

Having established these propositions appellant's next step in the argument is this: "The rulings made by the trial court in the rejection of certain evidence offered by the defendant to substantiate truth and offset a charge of actual malice establish that the trial court acted upon an erroneous concept of legal principles." Then follows the assertion of error in sustaining objections to the following questions addressed to the chairman, Mr. Allen: "Q. Were you satisfied that the evidence had disclosed shady dealing, preferential treatment and influence peddling?" "Q. Mr. Silver: Was your committee satisfied at the time you gave this interview that the evidence had disclosed influence peddling, shady deals, and preferential treatment?" These rulings are not presented as grounds for granting a new trial; they are said to be reasons for the denial of such a motion. Without pausing to discuss the correctness of the rulings, it is plain that the argument that the court acted upon an erroneous concept of legal principles in granting the new trial cannot prevail.[2]

If there were error in these rulings, that might afford ground for a new trial at the instance of a defeated defendant, but the rule does not work in reverse. Appellant would have the order granting a new trial upon the ground of insufficient evidence reversed for the exclusion of evidence; no precedent for such a view is cited and sound reasoning does not sanction that result. The reviewing court in considering an appeal from an order granting a new trial must accept (absent augmentation) and act upon the evidence

---

[2]We observe in passing, however, that these questions do not relate to the report of the committee; exhibit A to appellant's opening brief shows that that report was not issued until March, 1958, while the broadcast occurred on January 24, 1958. Moreover, the fact that Mr. Allen would have given favorable responses to these questions could not help appellant. Witkin, Summary of California Law (7th ed.), page 1288: "(2) *Accurate Repetition No Defense.* Where one person purports to *repeat another's* defamatory statement, he is merely republishing the same libel or slander (see *supra*, § 106). Proof that the first person actually made the statement is therefore immaterial; to constitute a defense the *defamatory charge itself* must be shown to be true. 'If A says B is a thief, and C publishes the statement that A *said* B was a thief, in a certain sense this would be the truth, but not in the sense that the law means . . . it would be but a repetition by him of a slanderous charge. His defense must consist in showing that in fact B is a thief.' (*Gilman* v. *McClatchy* (1896) 111 Cal. 606, 612 [44 P. 241]; see Rest., Torts § 582; *Ray* v. *Citizens-News Co.* (1936) 14 Cal.App.2d 6, 8, 57 P.2d 527 ['A false statement is not less libelous because it is the repetition of rumor or gossip or of statements or allegations that others have made concerning the matter'].) "

presented in the record before it; it can neither add to nor subtract from the showing thus made. ▮ If the record contains evidence that was erroneously received it must be considered in examining the question of sufficiency of the evidence; if on the contrary there is an absence of evidence which should have been received, the court cannot treat it as part of the proof or reverse the order through the process of forcing into the evidence something that is not there. See *Deary* v. *Shields*, 54 Cal.App.2d 795, 799 [129 P.2d 935]; *Gunning* v. *Forbes*, 60 Cal.App.2d. 521, 523 [141 P.2d 30]; *Waller* v. *Southern Cal. Gas Co.*, 170 Cal.App.2d 747, 757 [339 P.2d 577]; *Jones* v. *Brown*, 176 Cal.App.2d 184, 186 [1 Cal.Rptr. 267]; *Williams* v. *Hawley*, 144 Cal. 97, 100 [77 P. 762]; *Studer* v. *Plough*, 179 Cal.App.2d 436, 440 [3 Cal. Rptr. 785]; *Tyra* v. *Board of Police & Fire etc. Comrs.*, 101 Cal.App.2d 248, 250 [225 P.2d 617]; *Shepherd* v. *Turner*, 129 Cal. 530, 532 [62 P. 106]; 36 Cal.Jur.2d section 157, page 364; 66 C.J.S. section 196c, pages 473-474.

In *Williams* v. *Hawley, supra,* the court said, at page 100: "The notice of motion referred to in this entry, which perhaps means the notice of intention to move for a new trial, is not made a part of the bill of exceptions, and, consequently, though printed in the transcript, it is no part of the record, and we cannot examine it for a statement of the grounds of the motion."

*Waller* v. *Southern Cal. Gas Co., supra,* 170 Cal.App.2d 747, 757: "But we must take the record as we find it. We cannot strike or disregard any evidence favorable to the prevailing party merely because it was erroneously received."

The rest of appellant's brief is devoted to review of the evidence in a manifest attempt to induce the court to follow the same process and it overlooks some of the cardinal rules of proper presentation of an appellant's contention of insufficiency of the evidence. ▮▮ Our present question is whether there was any substantial evidence to sustain a verdict in favor of plaintiff if rendered (*Yarrow* v. *State of California*, 53 Cal.2d 427, 434 [2 Cal.Rptr. 137, 348 P.2d 687]), and so the rules laid down in *Davis* v. *Lucas*, 180 Cal.App.2d 407, 409 [4 Cal.Rptr. 479], are here pertinent: "The appellate court starts with the presumption that the evidence sustains each finding of fact [citations], and the burden rests upon appellant 'to demonstrate that there is no substantial evidence to support the challenged findings.' [Citations.] ▮ To this end appellant must set forth in his

brief all material evidence upon the point, not merely his own proofs [citations] ; if this is not done the point is deemed waived (so held in the cases just cited). . . . ██ '[A] claim of insufficiency of the evidence to justify findings, consisting of mere assertion without a fair statement of the evidence, is entitled to no consideration, when it is apparent, as it is here, that a substantial amount of evidence was received on behalf of the respondents.' [Citation.] ██ In the circumstances we are entitled to accept the statements of respondent's brief as to the evidence upon the subject. Respondent's counsel has assembled enough of the testimony in his brief to show at least a substantial conflict in the evidence. Our duty begins and ends with the determination of the existence of such a conflict.''

██ It is likewise true at bar that respondent has arrayed adequate evidence to show that there is at least a substantial conflict and our duty in this regard is ended. ██ "It is not the province of a reviewing court to comment on each evidentiary conflict or disagreement or to present a detailed argument on the sufficiency of the evidence to support the findings (*Pores* v. *Purity Milk Co.,* 135 Cal.App.2d 305, 309 [287 P.2d 169].) ██ "[A]n appellate court is not charged with the duty of reviewing the evidence in an effort to convince appellant of its sufficiency or to otherwise demonstrate the fact.'' (*Edwards* v. *Container Kraft Carton etc. Co.,* 161 Cal.App.2d 752, 756 [327 P.2d 622].)

Order affirmed.

Fox, P. J., and Herndon, J., concurred.

The petition in Civ. No. 26063 for a rehearing was denied April 23, 1963.