Opinion
COLE, J.
The People appeal an order suppressing the results of a chemical test taken to determine defendant’s blood alcohol level. We reverse.
About 7 p.m. on April 1, 1975, defendant committed an alleged battery on a citizen. Officers arrived on the scene at 7:30 p.m. and 10 minutes later defendant was placed under citizen’s arrest for the battery. He was thereupon taken into custody by the officers. Noting an odor of alcohol emitting from defendant, the officers administered a field *Supp. 10 sobriety test which, in their opinion, defendant failed. The victim of the alleged battery and other witnesses indicated that defendant had been driving immediately prior to his commission of the battery. Based on defendant’s apparently intoxicated condition and this information, the police report indicates that “the officers decided that they were further arresting deft for Invest, of driving under the influence of an intoxicant.” Accordingly, the officers told defendant of this, advised him of the provisions of Vehicle Code section 13353, and subsequently caused a blood alcohol test to be administered to him. It is the results of this test which were suppressed.
I
Vehicle Code section 13353 provides for the administration of a blood alcohol test upon persons “lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor.” The section further states “[T]he test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor.”
The problem in this case is that, insofar as a drunk driving “arrest” was concerned, it was for a misdemeanor not committed in the officer’s presence. Therefore, if the validity of the blood alcohol test can be sustained only by reliance on that “arrest” it would not have been lawfully made, since for most nonfelony arrests[1] a public offense has to have been committed in the presence of the officer if he is to arrest a person without a warrant. Penal Code section 836, paragraph 1. Thus, there was no literal compliance with Vehicle Code section 13353 insofar as the second “arrest” is concerned.
The defendant here, however, was already validly in custody under a citizen’s arrest for battery. There was no need for .a second arrest at all. “An arrest is taking a person into custody, in a case and in the manner authorized by law . . . .” Penal Code section 834. “An arrest is made by an actual restraint of the person, or by submission to the custody of an *Supp. 11 officer . . (Pen. Code, § 835.) Defendant had already been taken into custody. In these circumstances, “[t]here was therefore no need to ‘arrest’ him____” (In re Smiley (1967) 66 Cal.2d 606, 628 [58 Cal.Rptr. 579, 427 P.2d 179].)
II
People v. Brannon (1973) 32 Cal.App.3d 971 [108 Cal.Rptr. 620] and People v. Rawlings (1974) 42 Cal.App.3d 952 [117 Cal.Rptr. 651], held that, in the absence of constitutional violations, a blood alcohol test is not inadmissible merely because the test was administered in violation of Vehicle Code section 13353. The question, then, is whether the warrantless blood alcohol test administered here violated defendant’s Fourth Amendment rights. We hold that it did not.
Concededly, the administration of a blood alcohol test is a search. The Fourth Amendment, however, by its very terms, prohibits only unreasonable searches. “. . . standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application . .. .” (Ker v. California (1963) 374 U.S. 23, 33 [10 L.Ed.2d 726, 737, 83 S.Ct. 1623].) “ ‘[T]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances.’ ” (Bielicki v. Superior Court (1962) 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 288], quoting from Go’Bart Import Co. v. United States (1931) 282 U.S. 344, 357 [75 L.Ed. 374, 382, 51 S.Ct. 153]; see also People v. Webb (1967) 66 Cal.2d 107, 114-115 [56 Cal.Rptr. 342, 19 A.L.R.3d 708].)
People v. Superior Court (Hawkins) (1972) 6 Cal.3d 757 [100 Cal.Rptr. 281, 493 P.2d 1145], interpreting Schmerber v. California (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826], held that for a blood alcohol test to be admissible in the absence of consent, two tests had to be met. First, there must be probable cause for the officers to believe that the person is intoxicated. (Schmerber speaks of “a clear indication that in fact such evidence will be found” (16 L.Ed.2d, at p. 919) and of “the required relevance and likely success of a test of petitioner’s blood for alcohol.” (Id.); Hawkins refers to a “reasonable belief that the person is intoxicated” (6 Cal.3d, at p. 761).) This element is clearly present in our case.
Second, Hawkins required that the blood alcohol test must be incident to a valid arrest. The court ruled that the mere fact that the blood alcohol level of a subject dissipates with the passage of time was not enough to *Supp. 12 sustain the warrantless administration of a nonconsensual seizure of blood. Therefore, no theory of “emergency” validated the blood test theory involved. (6 Cal.3d, at p. 765, fn. 7.)
The blood in Hawkins had been taken from the defendant while he was in a hospital emergency room awaiting treatment following an automobile accident. The defendant had not been arrested at the time and a purported consent given by him was found, as a matter of fact, not to have been freely and voluntarily given.
Quoting from Schmerber v. California, supra, our Supreme Court emphasized that “. . . Schmerber’s approval of the compulsory seizure of blood is clearly grounded on the premise that it is incidental to a lawful arrest.” (6 Cal.3d, at p. 761.) Continuing on the same theme, the court quoted from its own decision in People v. Duroncelay (1957) 48 Cal.2d 766, 772 [312 P.2d 690], stating that there “. . . we made it perfectly clear that the seizure of the blood sample could only be justified as ‘incident to the lawful arrest of one who is reasonably believed to have violated section 501 of the Vehicle Code’.” (6 Cal.3d, at p. 762.)
The dissent understandably points to the fact that the Supreme Court focused its attention on the factor of lawful arrest in Hawkins. But, in Hawkins there had never been an arrest of the defendant at all. In contrast, in the present case, as pointed out above, defendant was already in custody and a fresh arrest would have been superfluous.[2] We do not regard Hawkins as controlling in this circumstance.
Schmerber upheld the administration of a test where the arrest of the driver was for a felony offense of driving under the influence of alcohol[3] although the subsequent prosecution was only under a misdemeanor charge of drunk driving. (16 L.Ed.2d, at p. 918, fn. 12.) It would be most anomalous in this case to hold the blood alcohol test invalid precisely because the arrest was for a misdemeanor not committed in the officer’s *Supp. 13 presence, when the test was taken in connection with the prosecution of that very offense and the need for a new “arrest” was irrelevant since defendant was already in custody.
Our dissenting colleague believes that People v. Superior Court (Hawkins), supra, 6 Cal.3d 757, compels the suppression of the evidence because there has not been an arrest as such. We believe that, given the facts of this case and defendant’s preexisting arrest, the administration of the test did not constitute an unreasonable search in the light of the facts of this case.
Alarcon, J., concurred.
HOLMES, P. J.
I dissent.
I read People v. Superior Court (Hawkins) (1972) 6 Cal.3d 757 [100 Cal.Rptr. 281, 493 P.2d 1145], as saying that intrusion of the person to obtain a blood sample will not be tolerated, absent consent or “well-delineated exceptions,” unless it is incident to an arrest for an offense to which the blood sample is causally related. This conclusion seems necessary because of: (1) the court’s elucidation of the reasons for tying the right of warrantless search to a lawful arrest—i.e., to remove weapons and seize evidence relevant to the offense for which arrest is made (6 Cal.3d, at p. 763)—thus giving restrictive meaning to the word “incident” in the expression “incident to an arrest”; (2) the court’s analysis of section 13353 of the Vehicle Code as an “extreme measure” expressly conditioned by the Legislature upon “a lawful arrest for driving” (6 Cal.3d, at p. 765); (3) refusal of the court to accept the need for expedition in blood testing as an excuse for lack of an official arrest even under circumstances where the defendant was as effectively immobilized as if he were under arrest (6 Cal.3d, at p. 765); (4) the court’s rejection of the suggestion that “arrest” under the circumstances would be an idle act (6 Cal.3d, at p. 764); (5) rejection by the court of the suggestion that subsequent voluntary appearance of defendant without an arrest is equivalent to an arrest (6 Cal.3d, at p. 764, fn. 5).
My conclusion is that Hawkins, the latest pronouncement on the subject by our court, stands for the proposition that section 13353 of the Vehicle Code is itself an unwelcome invasion of the right of privacy, made necessary because of the magnitude of the drunk driving problem, and that intrusion upon the person for blood-alcohol evidence will be strictly limited to the situations expressly condoned by the statute—i.e., arrests for driving offenses.
*Supp. 14 I find support for this conclusion in the implications of a lawful arrest. The immediate function of an arrest is to take custody and prevent escape. Under the particular facts of the instant case a formal arrest of defendant for drunk driving may appear at first blush to be functionless inasmuch as defendant was already in custody and secured from escape. But the act of arresting a suspect has other consequences. If, as in the instant case, the arrest is made after the supposed offense is completed, the arresting officer must inform the suspect of the offense for which he is held (Pen. Code, § 841). This enables the arrestee to make important decisions, such as whether to voice extenuating explanation or to remain silent; whether to seek immediate legal advice or to defer it; whether to arrange for bail or to await possible release on promise to appear; or whether to take steps to preserve evidence. In short, a lawful arrest serves the secondary purpose of alerting the suspect to the fact that he is in trouble, and what kind and how serious, so that he may act appropriately in his own interest. This secondary arrest seems to be implicitly recognized by the rule, codified in section 836 of the Penal Code, that a peace officer may arrest for a nonfelony offense only when he has reasonable cause to believe that the suspect has committed it in his presence. Thus, the law does not allow peace officers to impose these secondary burdens of arrest for misdemeanor on a citizen unless the officer has good reason, by current perception, to believe the offense to be committed.
Under the rationale of the majority’s opinion peace officers could circumvent the rules limiting misdemeanor arrests as stated in sections 836 and 841 of the Penal Code with the result that a person could be nominally arrested for a relatively innocuous offense only to discover, later, that the real cause was not divulged with resultant prejudice in loss of evidence, disappearance of witnesses or failure of the defendant to promptly avail himself of legal advice. We are warned by the opinion in Hawkins, supra, that the process of arrest for drunk driving is not an idle ritual where the suspect is immobilized by injury. (People v. Superior Court (Hawkins) (1972) 6 Cal.3d 757 at pp. 762-764.) Until higher authority holds otherwise I would not regard an arrest for drunk driving. as an idle ritual when defendant is immobilized by detention pursuant to a prior arrest on an unrelated and possibly less serious charge of battery.

Vehicle Code section 40300.5 provides, “Notwithstanding any other provision of law a peace officer may, without a warrant, arrest a person involved in a traffic accident when the officer has reasonable cause to believe that such person had been driving while under the influence of intoxicating liquor . . . .” No traffic accident is involved in the present case.

It is fortuitous in the present case that there was a valid arrest for battery. It would be stretching things to say that the blood alcohol test was incident to the battery charge itself; the officers made no claim that the test was conducted because of dependency on that charge. (People v. Superior Court (Simon) (1972) 7 Cal.3d 186, 198 [101 Cal.Rptr. 837, 496 P.2d 1205]; Agar v. Superior Court (1971) 21 Cal.App.3d 24, 28-32 [98 Cal.Rptr. 148].) The alleged battery and the alleged drunk driving offenses each arose out of the same situation and involved the same witnesses. Only in that sense was the investigation of defendant’s state of inebriety incident to the battery arrest.

Under California law a felony arrest is lawful so long as the arresting officer has reasonable cause to believe that the person arrested had committed a felony, whether or not, in fact, one had been committed. (Pen. Code, § 836.)