Opinion
STEVENS, J.
Respondent was charged with misdemeanor drunk driving (Veh. Code, § 23102, subd. (a)) and with driving a motor vehicle without having a valid license (Veh. Code, § 12500, subd. (a)). The evidence against her was ordered suppressed on the theory that she was not “driving” a “motor vehicle.” The People appeal.
*Supp. 5 Facts
A passing citizen saw respondent sitting on the curb next to a “moped” which was lying on the side of the road. Believing she had been involved in an-accident, he stopped to render assistance. After noting that her speech was slurred and incoherent, and the odor of alcohol, he concluded that she was intoxicated. Based upon what respondent told him, he concluded that she had been pedaling the moped and fell when she hit the curb.
The citizen asked some kids across the street to call the police and in a few minutes both a police officer and a Highway Patrol officer arrived. Respondent failed to pass a sobriety test. A chemical test revealed her blood alcohol content was between .22 and .23.
All witnesses described a “moped” as a “little motor scooter” which could be propelled either by pedaling or by the motor. The citizen indicated that, “You pedal and kick the engine in to get it started.” Although it was clear that respondent was pedaling the moped, there was no evidence that the motor was running prior to the accident.
Issues
1. Are all persons driving a vehicle equipped with a motor subject to arrest and prosecution for drunk driving?
2. Is a person “driving” a vehicle if the vehicle is in motion, but the engine has not been turned on?
3. Is a person driving a motorized vehicle subject to the implied consent law?
4. Was respondent’s arrest lawful?
Discussion
1. Persons driving a vehicle equipped with a motor are subject to arrest and prosecution for drunk driving.
It is unlawful for any person who is under the influence of intoxicating liquor, or under the combined influence of intoxicating liquor and a *Supp. 6 drug, to drive a vehicle “upon a highway” or “upon other than a highway” (Veh. Code, § 23102, subds. (a) and (b)).
The definitions set forth in the Vehicle Code govern the construction of that code unless the provision or context otherwise requires (Veh. Code, § 100). A “vehicle” is defined as “a device by which any person or property may be propelled, moved, or drawn upon a highway, excepting a device moved exclusively by human power or used exclusively upon stationary rails or tracks” (Veh. Code, § 670). A “motor vehicle” is defined as “a vehicle which is self-propelled.” (Veh. Code, § 415.)
In California, the terms “motorcycle,” “motor driven cycle,” and “motorized bicycle” are defined by statute. A “motor-driven cycle” is “any motorcycle, including every motor scooter, with a motor which produces less than 15-gross brake horsepower, and every bicycle with a motor attached. A motor-driven cycle does not include a motorized bicycle, as defined in Section 406.” (Veh. Code, § 405.) A “motorized bicycle” is “any two-wheeled or three-wheeled device having fully operative pedals for propulsion by human power, or having no pedals if powered solely by electrical energy, and an automatic transmission and a motor which produces less than 2 gross brake horsepower and is capable of propelling the device at a maximum speed of not more than 30 miles per hour on level ground.” (Veh. Code, § 406.) On the other hand, a “bicycle” is defined as “a device upon which any person may ride, propelled exclusively by human power through a belt, chain or gears, and having either two or three wheels in tandem or tricycle arrangement.” (Veh. Code, § 21200.)
The term “motor vehicle” includes a motor truck, (Veh. Code, § 410), a truck tractor, (Veh. Code, § 655), a snow mobile (Veh. Code, § 557), a motorcycle, (Veh. Code, § 400; Harrison v. Cal. State Auto. Assn. Inter-Ins. Bureau (1976) 56 Cal.App.3d 657, 663 (6) [128 Cal.Rptr. 514]), a mobile crane or mobile truck crane (Colby v. Liberty Mutual Ins. Co. (1966) 220. Cal.App.2d 38, 44-45 (5) [33 Cal.Rptr. 538]; Donahue Constr. Co. v. Transport Indem. Co. (1970) 7 Cal.App.3d 291, 300 [86 Cal.Rptr. 632]), a motorized forklift, (Travelers Indem. Co. v. Colonial Ins. Co. (1966) 242 Cal.App.2d 227, 236-238 (6-8) [51 Cal.Rptr. 724][1] and a bulldozer (Lambert v. Southern Counties Gas Co. (1959) 52 Cal.2d 347, 351 [340 P.2d 608].)
*Supp. 7 Although there is no California case discussing the status of motorized bicycles, New York courts have concluded that motorized bicycles are motor vehicles within their vehicle and traffic laws. (Lalomia v. Bankers & Shippers Ins. Co. (1970) 35 App.Div.2d 114 [312 N.Y.S.2d 1018, 1020], affd. (1972) 31 N.Y.2d 830 [339 N.Y.S.2d 680, 291 N.E.2d 724].) See, also, People v. Devlin (1970) 64 Misc.2d 327 [314 N.Y.S.2d 670] (“mini-bike”); Zapp v. Ross Pontiac Inc. (1972) 39 App.Div.2d 121 [332 N.Y.S.2d 121] (“go-cart”).
It has been held that farm tractor is a vehicle within the meaning of the drunk driving laws. (State v. Powell (Mo. 1957) 306 S.W.2d 531 [66 A.L.R.2d 1141]; State v. Green (1959) 251 N.C. 141 [110 S.E.2d 805].)[2] However, a New Jersey court recently held that the driver of a moped could not be convicted of operating a motor vehicle while under the influence of intoxicating liquor where the Legislature had recently amended the law so as to expressly exclude motorized bicycles from the statutory definition of “motor vehicle.” (State v. Gilfesis (1977) 148 N.J.Super. 369 [372 A.2d 680].)
California statutes are different in two significant respects. First, the driver of any vehicle is subject to prosecution for misdemeanor drunk driving. (Veh. Code, § 23102, subds. (a) and (b).) Second, the statutory definition of a vehicle includes all devices by which a person or property may be propelled or moved upon a highway, except a device moved exclusively by human power or used exclusively upon stationary rails or tracks. (Veh. Code, § 670.)
The word, “exclusively” has a clear meaning and must be given effect. (People v. Pakchoian (1952) 114 Cal.App.2d Supp. 831, 832-833 [250 P.2d 767].) Since a moped is equipped with a motor, it is not a means of conveyance propelled exclusively by human power. Hence, it is a vehicle within the ambit of our drunk driving laws. (Veh. Code, §§ 406, 670, and 23102, subds. (a) and (b).)
2. A person is driving a motor vehicle when he or she is steering or controlling a vehicle which is in motion, even though the motor is off at that time.
*Supp. 8 Section 305 of the Vehicle Code defines a “driver” as “one who drives or is in physical control of a vehicle.” The word “drive” has been defined to mean “to impel the motion and quicken” (Bosse v. Marye (1926) 80 Cal.App. 109, 118 (3) [250 P. 693]); “to cause the vehicle to be in motion” {Poling v. State (1973) 156 Ind.App. 145 [295 N.E.2d 635, 637]); and to mean “steering and controlling a vehicle while in motion.” (McDuell v. State (Del. 1967) 231 A.2d 265, 267.)[3]
To warrant conviction, only slight movement is necessary. (See, e.g., State v. Magdich (1928) 105 W.Va. 585 [143 S.E. 348] (8 to 12 feet); Tennino v. Hyde (1926) 138 Wash. 251 [244 P. 550] (12 to 15 feet).) One court held that where defendant started the motor and spun its wheels in an eifort to extricate the vehicle from mud he was driving the vehicle. (State v. Parker (1959) 81 Idaho 51 [336 P.2d 318].)
Respondent’s reliance upon People v. Kelley (1938) 27 Cal.App.2d Supp. 771 [70 P.2d 276] is misplaced. In Kelley, the only evidence was that defendant, while intoxicated, entered a car involved in a collision, started the engine, and with the help of others who were pushing the car, disengaged it and backed it four to five feet. The front wheel was demolished and the axle had to be dragged. Although the court held that Kelley was not “driving” the vehicle, it was careful to point out that it had not attempted to provide a definition of the word “drive” applicable to all situations. (Id. at p. 775.)
Kelley must be understood in light of the facts and issue before the court. (Porter v. Bakersfield & Kern Elec. Ry. Co. (1950) 36 Cal.2d 582, 590 (6) [225 P.2d 223].) In this case, the moped was operable and was propelled considerably more than four to five feet before it hit the curb. We conclude that respondent did steer and exercise physical control over a vehicle which was in motion.
*Supp. 9 Respondent next contends that she was not subject to prosecution because she was simply pedaling the moped and there was no evidence that the engine was running prior to the accident. However, it has been consistently held that a person steering or controlling a vehicle may be prosecuted for drunk driving when the vehicle is in motion but the engine is off. Prosecutions have been upheld where an intoxicated person was steering or controlling a vehicle being pushed or towed by others. (See e.g. Walker v. State (1966) 241 Ark. 396 [408 S.W.2d 474]; Harris v. State (1958) 97 Ga.App. 495 [103 S.E.2d 443]; Duckett v. State (1963) 108 Ga.App. 317 [132 S.E.2d 811]; Hester v. State (1954) 196 Tenn. 680 [270 S.W.2d 321, 47 A.L.R.2d 568]; Rogers v. State (1944) 147 Tex.Crim. 602 [183 S.W.2d 572]; Chamberlain v. State (1956) 163 Tex.Crim. 529 [294 S.W.2d 719]; State v. Tacey (1930) 102 Vt. 439 [150 A. 68, 68 A.L.R. 1353].) A prosecution was also upheld where defendant steered an inoperative vehicle as it coasted down a steeply inclined driveway. (Farley v. State (1965) 251 Miss. 497 [170 So.2d 625].)
In Hester v. State, supra, the Tennessee Supreme Court stated: “. . . The statute was designed to prevent drunken persons (those under the influence of an intoxicant or drug) from being in control of an instrument that is as dangerous as an automobile might be to others upon the public highway, at a time when the operator was so inebriated that he was incapable of exercising the mental forethought and actions that are required of one operating an automobile under present traffic conditions. We are of the opinion that even though the car be not operated under its own power, the highway hazard to others lawfully using the highway is as great where an inebriated person is in control of the car as though it were being operated under its own motive power. The nature of the motive power is not an element of the statute and it seems unnecessary for us to add such to this statutory offense. The Legislature did not place in the statute a requirement that the vehicle be operated under its own power.
“. . . Of course, the speed of the car could not be attained by its own motive power at the time of the arrest when the motor was not in operation but nevertheless his control was as complete so far as the guidance of the automobile was concerned as though it. was in perfect running condition. Thus, obviously, one in an inebriated condition being at the wheel of an automobile which was being pushed on the highway could suddenly veer it one way or the other and cause just as serious if not a more serious wreck than one which was running under its own power. Thus, it seems to us that the test is, was the person in control of *Supp. 10 his automobile in an inebriated condition? If he was, then he is guilty under the statute whether the motor of the car was running or not so long as the car was on the highway and might cause injury, death and damage to others.” (Hester v. State, supra, 270 S.W.2d 321, 322.)
Section 23102, subdivision (a) of the Vehicle Code states that it is unlawful to drive a vehicle while under the influence of intoxicating liquor. If the Legislature had intended to limit the application of the statute to, situations where the vehicle’s motor was running, it could have easily added language to that effect. Since the Legislature did not add such language, it is certainly not our province to do so. (Code Civ. Proc., § 1858; Estate of McDill (1975) 14 Cal.3d 831, 838 [122 Cal.Rptr. 754, 537 P.2d 874].)
The driver of a vehicle being towed certainly is not powerless to avoid collisions where he can apply the brakes or alter the course of a vehicle. (Conner v. Southern Pacific Co. (1952) 38 Cal.2d 633, 637-638 [241 P.2d 535].) The Legislature apparently recognized that such a vehicle should not be placed in the hands of an intoxicated driver. {Hester v. State, supra.)
To be sure, an intoxicated person pedaling a moped at five miles per hour presents far less danger than a drunk who is in control of a two and one-half ton truck. However, respondent could have engaged the engine, accelerated the moped, and then been in a position to cause serious injury to others.
We conclude that the statute evidences an intent on the part of the Legislature to prohibit any intoxicated person from being in control of a vehicle. Therefore, if a vehicle, equipped with a motor, is being steered or controlled by an intoxicated person, and the vehicle is in motion, the driver is subject to prosecution even if the engine is not running at that time.
3. A person driving a vehicle equipped with a motor upon a highway is subject to the requirements of the implied consent law even if the motor is not then running.
Any person who drives a motor vehicle upon a highway who is lawfully arrested for any offense allegedly committed while he was driving the motor vehicle while under the influence of intoxicating liquor must submit to a chemical test when requested to do so by a peace *Supp. 11 officer. (Veh. Code, § 13353, subd. (a).) A person who refuses to submit to such a test, or one who fails to complete the test, faces the loss of his driving privileges for a period of six months. (Veh. Code, § 13353, subd. (b).)
Under this statute, five requirements must be met. First, a person must have driven a motor vehicle. Second, the motor vehicle must have been driven on a highway. (Weber v. Orr (1969) 274 Cal.App.2d 288, 291 [79 Cal.Rptr. 297].) Third, he must have been lawfully arrested by a citizen or peace officer for an offense allegedly committed while he was driving the vehicle while under the influence of intoxicating liquor. (People v. Superior Court (Hawkins) (1972) 6 Cal.3d 757, 765 [100 Cal. Rptr. 281,493 P.2d 1145]; Spurlock v. Department of Motor Vehicles (1969) 1 Cal.App.3d 821, 826-828 [82 Cal.Rptr. 42]; Green v. Department of Motor Vehicles (1977) 68 Cal.App.3d 536 [137 Cal.Rptr. 368].) Fourth, the test must be administered at the direction of a peace officer who reasonably believes the driver is under the influence of intoxicating beverages. (People v. Superior Court (Hawkins), supra, 6 Cal.3d 757, 765; People v. Bianco (1975) 55 Cal.App.3d Supp. 8, 10-11 [127 Cal.Rptr. 92].) Lastly, before the test is administered, he must have been formally placed under arrest by the arresting officer, unless he is unconscious, or unless he has previously been placed under arrest by a citizen. (People v. Superior Court (Hawkins), supra; Carrington v. Superior Court (1973) 31 Cal.App.3d 635 [107 Cal.Rptr. 546]; People v. Bianco, supra, Green v. Department of Motor Vehicles, supra.)
In this case, respondent was formally placed under arrest after having driven her moped on a highway. Before considering whether the arrest was valid, we must first determine whether she was driving a “motor vehicle.” We answer this question in the affirmative for three basic reasons.
First, a motor vehicle is defined as a vehicle which is self propelled. (Veh. Code, § 415). If the test was whether the vehicle was running or not, then a “motor vehicle” would be instantly transformed into a “vehicle” every time the ignition was turned off. Therefore, courts have sensibly concluded that any vehicle is a motor vehicle if.it is capable of moving from place to place under its own power. (Colby v. Liberty Mutual Ins. Co., supra, 220 Cal.App.2d 38, 44-45; Travelers Indem. Co. v. Colonial Ins. Co., supra, 242 Cal.App.2d 227, 236-238; Donahue Constr. Co. v. Transport Indem. Co., 7 Cal.App.3d 291, 300 [86 Cal.Rptr. 632].)
*Supp. 12 Colby was decided in 1963 and the implied consent law was enacted in 1966. Since the term “motor vehicle” had previously been judicially construed to include those vehicles capable of moving under their own power, the conclusion is inescapable that the term “motor vehicle” employed in the implied consent law was to have precisely the same meaning. (Veh. Code, § 100; People v. Curtis (1969) 70 Cal.2d 347, 355 [74 Cal.Rptr. 713, 450 P.2d 33].)
Second, while the immediate purpose of the implied consent law is to obtain the best evidence of blood alcohol content, the long range purpose is to inhibit intoxicated persons from driving upon the highways and thus reduce the carnage and slaughter ón the highways which now reaches astounding figures only heard of on the battlefield. (Kessler v. Department of Motor Vehicles (1969) 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900]; Anderson v. Cozens (1976) 60 Cal.App.3d 130, 143 [131 Cal.Rptr. 256].)
An intoxicated driver pedaling a moped can collide with a curb, a pedestrian, or a passing motorist. Since the purpose of the implied consent law is to inhibit drunk drivers from driving on the highways, we do not feel that the Legislature intended to create an exception in those cases where the driver had not turned on the vehicle’s motor at the time he was apprehended. Indeed, if the statute was applicable only if the motor was running, a driver might avoid being required to submit to a chemical test by simply turning off the ignition when faced with apprehension. That would be manifestly absurd.
Third, although the implied consent law applies to all persons who drive in California, whether or not they are licensed by any state, (Jones v. Department of Motor Vehicles (1977) 71 Cal.App.3d 615, 620 [139 Cal.Rptr. 734]), we note that the sanctions imposed are not an empty threat inasmuch as persons driving a moped must be licensed. (See Veh. Code, §§ 12500, subd. (a) and 12804, subds. (b) and (f).)
We, therefore, conclude that the driver of a vehicle which is equipped with a motor who is lawfully arrested while operating the vehicle on a highway while under the influence of intoxicating liquor is subject to the requirements of the implied consent law if, 1) there is reasonable cause to believe the engine was running or, 2) if the engine was not running, but the vehicle is or was capable of moving from place to place under its own power. We include the past tense in this definition for the obvious reason that the ignition may have been turned off, or the *Supp. 13 vehicle may have been damaged or immobilized as a result of a traffic accident.
In this case, the moped was equipped with a motor and was capable of moving from place to place under its own power. Hence, respondent was driving a motor vehicle. We turn to the last question, namely, whether she was validly arrested.
4. Respondent’s arrest was valid:
We are frequently called upon to determine the validity of a warrantless arrest for misdemeanor drunk driving. We, therefore, take this opportunity to briefly summarize the pertinent rules.
1. A private person may arrest another for a public offense committed or attempted in his presence, including misdemeanor drunk driving, and the individual may summon others, including peace officers, to aid him in the arrest. (Pen. Code, §§ 837, subd. (1) and 839; e. g. Green v. Department of Motor Vehicles, supra, (private citizen who witnessed drunk driving offense could summon officers to aid him in effecting an arrest, and once the individual was arrested, she was .subject to the implied consent law); see, also, People v. Bianco, supra, (once the accused was arrested by a citizen, when the officer arrived and concluded that he had been driving immediately prior to the batteiy, the defendant could be required to submit to a chemical test).
2. A peace officer may make an arrest whenever he has reasonable cause to believe that the person arrested has committed a public offense in his presence. (Pen. Code, § 836, subd. 1.) The term, “presence,” is liberally construed. (See McDonald v. Justice Court (1967) 249 Cal.App.2d 960, 962-963 [58 Cal.Rptr. 29][4] (arrest was valid where officers arrived less than one minute after receiving a radio report of an accident and found defendant with a strong smell of alcohol unconscious behind the wheel of a car which had hit a parked car); Noia v. Cozens (1973) 34 Cal.App.3d 691 [110 Cal.Rptr. 231] (an officer, following an erratic driver, turned on his red light. Defendant refused to stop and turned into the driveway of his residence. The arrest was valid although the officer momentarily lost sight of defendant); Packer v. Sillas (1976) 57 Cal.App.3d 206 [128 Cal.Rptr. 907J(defendant escaped apprehension by two Highway Patrol cadets and a Highway Patrol officer joined the chase *Supp. 14 and saw the vehicle before it disappeared. After searching the area, they found a vehicle which the cadets noted had the same license number as the vehicle they had pursued. Although the cadets identified a different person as the driver, defendant sealed his fate when he admitted driving the car and appeared to be intoxicated.)
When a peace officer stops a suspect after witnessing a drunk driving offense, he may summon a Highway Patrol officer and the latter may administer the sobriety test, place the suspect under arrest, and request him to submit to a chemical test. (Freeman v. Department of Motor Vehicles (1969) 70 Cal.2d 235 [74 Cal.Rptr. 259, 449 P.2d 195].)
3. A peace officer may, without a warrant, arrest a person involved in a traffic accident when the officer has reasonable cause to believe that such person had been driving while under the influence of intoxicating liquor or under the combined influence of intoxicating liquor and any drug. (Veh. Code, § 40300.5.) The term “traffic accident” means an accident involving at least one vehicle, which occurs either on a public street or elsewhere. (People v. Ashley (1971) 17 Cal.App.3d 1122, 1126-1127 [95 Cal.Rptr. 509].)
The obvious intent of the Legislature in enacting section 40300.5 was to eliminate, in misdemeanor drunk driving cases, the troublesome requirement that a peace officer can make an arrest only if he has reasonable cause to believe that the person to be arrested had committed the offense in his presence. (People v. Ashley, supra, 17 Cal.App.3d 1122, 1126; 52 Ops.Cal.Atty.Gen. 250, 251 (1969).)
In this case, after considering the information supplied by the citizen, réspondent’s condition, and her prior admission that she had driven the moped, the officer could conclude that she was involved in a traffic accident while driving a vehicle, and that by reason of having consumed alcoholic beverages, her mental and physical abilities were impaired and that she no longer had the ability to drive the vehicle with the caution characteristic of a sober person of ordinary prudence. The arrest was valid. (Veh. Code, §§ 40300.5, 23102, subd. (a) and 670. See People v. Schoonover (1970) 5 Cal.App.3d 101, 105-107 [85 Cal.Rptr. 69].)
Since respondent was validly arrested for driving a motor vehicle on a highway while under the influence of intoxicating liquor, the chemical test was admissible and the trial court erred in granting the motion to suppress.
*Supp. 15 Disposition
The order is reversed.
Respondent, Florence Elaine Jordan is directed to be present in the Municipal Court of the Santa Barbara-Goleta Judicial District on November 10, 1977, at 8:30 a.m., in the department of the judge then assigned to hear the criminal calendar. Further criminal proceedings may resume at that time.
Rickard, Acting P. J., and Lewellen, J.,* concurred.

Disapproved on unrelated grounds in Argonaut Ins. Co. v. Transport Indem. Co. (1972) 6 Cal.3d 496, 505 [99 Cal.Rptr. 617, 492 P.2d 673], and State Farm Mut. Auto. Ins. Co. v. Jacober (1973) 10 Cal.3d 193, 208 [110 Cal.Rptr. 1, 514 P.2d 953],

One court held that the driver of a horsedrawn stagecoach could not be prosecuted for drunk driving. (People v. Szymanski (1970) 63 Misc.2d 40 [311 N.Y.S.2d 120].) However, before our equestrian friends choose to celebrate by riding off into the sunset after consuming five fingers of Kentucky’s finest spirits, they might well consider that public intoxication is still a crime. (Pen. Code, § 647, subd. (f).)

Cases interpreting various language in drunk driving statutes are collected in 47 A.L.R.2d 570 et seq. While Vehicle Code, section 23102 prohibits a person from .“driving” while under the influence of intoxicating liquor, for purposes of tort liability, the term “driver” is given a broad definition. (See Arellano v. Moreno (1973) 33 Cal.App.3d 877, 882-883 [107 Cal.Rptr. 421].) In this case the moped was in motion. Hence, we need not consider whether sections 305 and 23102, subd. (a) of the Vehicle Code, when read together, might authorize conviction if an intoxicated person is found behind the steering wheel, the engine is running, but there is no proof that the vehicle was in motion. (Compare City of Kansas City v. Troutner (Mo.App. 1976) 544 S.W.2d 295 and People v. Clark (1977) 47 Ill.App.3d 568 [362 N.E.2d 407] with Thomas v. State (1976) 277 Md. 314 [353 A.2d 256].)

Overruled on an unrelated point in People v. Superior Court (Hawkins), supra, 6 Cal.3d 757, 765-766, footnote 7.

 Assigned by the Chairperson of the Judicial Council.