Filed 5/21/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DAVID KEITH BEALE, | H052612 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 23CV418048) |
| v. | |
| DEPARTMENT OF MOTOR VEHICLES, | |
| Defendant and Respondent. | |

This is an appeal from a denial of a petition for writ of mandate against the California Department of Motor Vehicles (DMV) after it suspended appellant David Keith Beale's driver's license for riding an electric bicycle under the influence of alcohol and refusing to submit to a blood alcohol test. Beale argues that an electric bicycle is not a "motor vehicle" under Vehicle Code section 13353 and that there was therefore no basis for suspending his license. We agree with Beale that the statutory scheme does not authorize the suspension of an electric bicycle rider's driver's license, even if the rider refuses a police officer's request to take a chemical test. On this basis, we reverse.

## I. BACKGROUND

### A. *The Incident*

On August 16, 2022, at approximately 7:30 p.m., San Jose Police Officer Nickolas Corini responded to a report of a man on a "motorized bicycle" who had hit a curb and injured his head. Officer Corini located the man on his "motorized/electric bicycle" at the scene, and the man identified himself as Beale. Corini smelled alcohol on Beale's breath and saw that he had bloodshot eyes. Corini proceeded to ask Beale a series of

"intoxication questions." After initially agreeing to perform field sobriety exercises, Beale then refused to do several of them because of balance issues. Beale also refused to consent to a preliminary alcohol screening test.

Corini determined that Beale was operating a motor vehicle under the influence of an alcoholic beverage in violation of Vehicle Code section 23152, subdivision (a), and placed him in handcuffs in the back of the patrol vehicle.[1] Corini asked if Beale would be willing to "provide a blood or breath sample per DMV's Implied Consent," and Beale refused. At 12:20 a.m. on August 17, Officer Corini procured a blood sample from Beale pursuant to a judicial warrant. The test showed a blood alcohol level of 0.113 percent. Beale received a suspension/revocation order and temporary driver's license with a notification that he had 10 days to request a hearing to show that the suspension of his license was not justified.

**B.      *The APS Hearings***

On December 9, 2022, the DMV held an initial "administrative per se" (APS) hearing under section 13353, at which the hearing officer and Beale's attorney discussed whether Beale's bicycle was an "electric bicycle" or a "motorized bicycle." The hearing officer ultimately continued the hearing so that Beale's counsel could obtain further information to show which Vehicle Code sections should apply, and for the parties to determine whether "the hearing [should] even proceed at that point" or whether the bicycle might "be exempt."

The DMV held the continued APS hearing on May 18, 2023 before a different hearing officer. At the hearing, Beale's attorney argued that Beale had an electric bicycle, which is not a motor vehicle and therefore not subject to the Vehicle Code provisions for the suspension of a driver's license. Beale's attorney submitted a

---

[1] Subsequent undesignated statutory references are to the Vehicle Code. Section 23152, subdivision (a) states, "It is unlawful for a person who is under the influence of any alcoholic beverage to drive a vehicle."

declaration from the deputy district attorney in the corresponding criminal case, in which the prosecutor sought to amend the charge against Beale from a violation of section 23152 to a violation of section 21200.5 (riding a bicycle while under the influence). The prosecutor's declaration asserted that an "electric bike" does not meet the statutory definition of a "motor vehicle" under section 23152.[2]

Beale presented an expert witness, Douglas Schwartz, who stated that he runs "probably the largest electric bike store in Northern California." Schwartz testified that an electric bicycle is different from a "moped motorized bicycle" because an electric bicycle does not require any type of licensing, has an upper speed limit of 28 miles an hour, and is required to have pedals. He also testified that electric bicycles are governed by the Consumer Product Safety Commission rather than the Department of Transportation, in contrast to mopeds. Schwartz looked at photographs of Beale's bicycle and identified it as a "Class 2" electric bicycle.

During the hearing, the hearing officer asked several clarifying questions of Schwartz regarding the difference between an electric bicycle and a moped, as well as the difference between an electric bicycle and a regular bicycle. The hearing officer also asked about the location of the battery and the lack of any requirement for a license or registration to ride an electric bicycle.

On May 23, 2023, the DMV issued its decision. The hearing officer found that "Officer Corini had reasonable cause to believe that [Beale] was driving a motor vehicle under the influence of alcohol." The hearing officer further concluded that Beale was "lawfully arrested for a violation of Vehicle Code Section 23152, 23153, or 23140." The hearing officer made the additional determinations that "[a]n electric bicycle that can move itself is a bicycle, but it is also a motor vehicle," and that "a bicycle rider has

---

[2] Notwithstanding this concession, section 23152 uses the term "vehicle" rather than "motor vehicle," as quoted in the previous footnote.

3

essentially the same rights and responsibilities as the driver of any vehicle," citing sections 21200, subdivision (a)(1), 21200.5, and 23612. Based on the totality of the evidence, the hearing officer concluded, "[T]he department's administrative action is deemed warranted." The hearing officer upheld the suspension of Beale's driver's license for the period of June 2, 2023 through June 1, 2024.[3]

## C.    *The Trial Court Proceedings*

On June 26, 2023, Beale filed a petition for writ of mandate in the Santa Clara County Superior Court. He argued that he rode a bicycle, not a motor vehicle, and was therefore not lawfully arrested for a violation of section 23152 or subject to an APS suspension of his driver's license. On November 3, 2023, Beale filed a supplemental memorandum of points and authorities in which he argued that the APS hearing also violated his due process rights because it combined the advocacy and adjudicatory roles of a prosecutor and decision maker into a single DMV employee. The DMV submitted a written opposition to the petition, arguing that Beale had waived any due process challenge because he never raised the issue during the APS hearings, that the hearing officer acted as a factfinder and not as an advocate, and that Beale did not demonstrate any prejudice in any event. As for the license suspension, the DMV argued that whether an electric bicycle is a motor vehicle is irrelevant because "bicyclists are subject to the same rules as drivers of vehicles." The DMV further argued that even if it were necessary to determine whether an electric bicycle is a motor vehicle under section 13353, the court should find that the class 2 bicycle operated by Beale was more like a

---

[3] Although that suspension period has now passed, this case is not moot: "Unless this suspension is rescinded, [appellant] would face a more severe penalty should he be found to have failed to submit to or complete a chemical test on a subsequent occasion. (Veh. Code, § 13353.)" (*Fitzpatrick v. Department of Motor Vehicles* (1993) 13 Cal.App.4th 1771, 1778, fn. 3.)

4

moped than a conventional bicycle, with "motor vehicle" defined broadly to achieve section 13353's purpose of making the roads safer by removing reckless drivers.

Following additional briefs from the parties, the trial court issued its decision on August 20, 2024. The court found that Beale had waived the due process challenge by failing to raise it below. Nevertheless, the court also went on to find that the due process challenge was "unpersuasive" in any event, as the hearing officer did not engage in any acts of advocacy and had asked legitimate and neutral questions to develop Schwartz's expert testimony. The trial court further found that the APS decision had fairly characterized the facts and the law.

With regard to the merits of the APS decision, the trial court stated: "Whether an electric bicycle is a motor vehicle is wholly irrelevant to the resolution of this case. Instead, the Court only needs to confirm that Beale is a bicyclist—regardless of the bicycle type he uses. If so, he is subject to the same rules as a driver of a vehicle." The court observed that section 21200 provides that bicyclists have the same rights and burdens as drivers of vehicles, including the application of statutes concerning driving under the influence of alcohol, such as sections 13353, 23152, and 23612. Even if section 21200 were not clear, the court would not "narrow its scope" because "[t]he public faces the same type of dangers from reckless driving under the influence of alcohol regardless of the vehicle type," and "[t]here is a real threat of injury from reckless bicycles, especially electric bicycles …." The court also asserted that it would "focus on the use of the word 'vehicle' in Vehicle Code section 13353, rather than the more restrictive term 'motor vehicle,' and hold that an electric bicycle is a vehicle within the meaning of the statute." The trial court concluded there was "sufficient evidence in the record to support the suspension of Beale's license." It denied the petition.

Beale timely appealed.

## II. DISCUSSION

### A. *The Standard of Review*

" 'In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, " 'whether the weight of the evidence supported the administrative decision.' " ' [Citation.]" *Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1233. "On appeal, this court ordinarily reviews the record to determine whether the trial court's findings are supported by substantial evidence. [Citation.] But where, as here, the determinative question is one of statutory or regulatory interpretation, an issue of law, we may exercise our independent judgment. [Citations.]" (*Ibid*.)

### B. *The Refusal Statute and the Resulting Administrative Penalties*

At the heart of this case is an administrative procedure—here, an "APS hearing" by the DMV—that arises from the failure to submit voluntarily to a blood alcohol test. Under Vehicle Code section 23612, "[a] person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of Section 23140, 23152, or 23153." (§ 23612, subd. (a)(1)(A).) Section 23612 goes on to state that the arrestee "shall be told" that a failure or refusal to submit to a chemical test of blood or breath (or urine) can result in various penalties, including the "administrative suspension" or "administrative revocation" of "the person's privilege to operate a motor vehicle." (§ 23612, subd. (a)(1)(D).)

Vehicle Code section 13353 et seq. describes the procedure for the DMV to follow in imposing administrative penalties for the refusal, including suspension or revocation of "the person's privilege to operate a motor vehicle" for various periods of time. That procedure includes holding an APS hearing at the request of the licensee. (§§ 13353, subd. (e); 13558.) For a first-time violation of sections 23140, 23152, and 23153, a

6

person's refusal to submit to chemical testing under section 23612 subjects them to a driver's license suspension "for a period of one year." (§ 13353, subd. (a)(1).) "An essential condition to the application of Vehicle Code section 13353 is that the suspect be *lawfully arrested on probable cause* to believe that he was *driving a motor vehicle* under the influence of an alcoholic beverage." (*Mueller v. Department of Motor Vehicles* (1985) 163 Cal.App.3d 681, 684.)

## C.     *Whether An Electric Bicycle is a "Motor Vehicle"*

Because section 13353, subdivision (a) expressly requires the arresting officer to have "had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140, 23152, or 23153," Beale maintains—just as he did in the APS hearing and in the trial court—that an electric bicycle is not a "motor vehicle." Our determination of this issue relies on an examination of the statutory scheme governing bicycles, vehicles, licenses, and riding or driving under the influence. For such statutory interpretation, we are guided by familiar principles.

"Our fundamental task is to ascertain the Legislature's intent and effectuate the law's purpose, giving the statutory language its plain and commonsense meaning. [Citation.] We examine that language in the context of the entire statutory framework to discern its scope and purpose and to harmonize the various parts of the enactment. [Citation.] 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Kaanaana v. Barrett Business Services, Inc.* (2021) 11 Cal.5th 158, 168–169.)

1.    **"Electric Bicycle" (Vehicle Code Section 312.5)**

Section 312.5 defines an "electric bicycle" as "a bicycle equipped with fully operable pedals and an electric motor that does not exceed 750 watts of power." (§ 312.5, subd. (a).)  It sets forth three classes of electric bicycles, defined as follows:

"(1) A 'class 1 electric bicycle,' or 'low-speed pedal-assisted electric bicycle,' is a bicycle equipped with a motor that provides assistance only when the rider is pedaling, that is not capable of exclusively propelling the bicycle, except as provided in paragraph (4), that ceases to provide assistance when the bicycle reaches the speed of 20 miles per hour, and that is not capable of providing assistance to reach speeds greater than 20 miles per hour.

"(2) A 'class 2 electric bicycle,' or 'low-speed throttle-assisted electric bicycle,' is a bicycle equipped with a motor that may be used exclusively to propel the bicycle, and that is not capable of providing assistance when the bicycle reaches the speed of 20 miles per hour.

"(3) A 'class 3 electric bicycle,' or 'speed pedal-assisted electric bicycle,' is a bicycle equipped with a motor that provides assistance only when the rider is pedaling, that is not capable of exclusively propelling the bicycle, except as provided in paragraph (4), and that ceases to provide assistance when the bicycle reaches the speed of 28 miles per hour, and equipped with a speedometer." (§ 312.5, subd. (a)(1)-(3).)

Subdivision (a)(4) provides that "[a] class 1 or class 3 electric bicycle may have start assistance or a walk mode that propels the electric bicycle on motor power alone, up to a maximum speed of 3.7 miles per hour."  (§ 312.5, subd. (a)(4).)

2.    **"Motor Vehicle" (Vehicle Code Section 415)**

Section 415 defines a "motor vehicle" as "a vehicle that is self-propelled."  (§ 415, subd. (a).)  Section 670 defines a "vehicle" as "a device by which any person or property may be propelled, moved or drawn upon a highway, excepting a device moved

exclusively by human power or used exclusively upon stationary rails or tracks." (§ 670.) At the hearing on this matter, Schwartz testified that the electric bicycle used by Beale had pedals and a class 2 sticker. As a class 2 electric bicycle, it was capable of being propelled "exclusively" by its motor. On the surface, this appears to qualify Beale's electric bicycle as a "motor vehicle."

### 3. "Not a Motor Vehicle" (Vehicle Code Section 24016)

Nevertheless, section 24016, which governs the requirements for electric bicycles, states in relevant part: "A person operating an electric bicycle is not subject to the provisions of this code relating to financial responsibility, driver's licenses, registration, and license plate requirements, *and an electric bicycle is not a motor vehicle*." (§ 24016, subd. (b), italics added.) Beale submits that the italicized language is clear and unambiguous on its face. Even if this clause is not unambiguous on its face, it is clear from the legislative history for section 24016 that the Legislature intended the clause to apply to the Vehicle Code as a whole. (See Sen Comm. on Transportation, Analysis of A.B. 1096 (2015-2016 Reg. Sess.), as amended June 15, 2015, pp. 3-4 [distinguishing "electric bicycles" from "motorized bicycles"].) The legislative history emphasizes that unlike mopeds or motorized bicycles, electric bicycles are "[l]ike bicycles" and should be held "to the same regulations … as bicycles," as specified in article 4 of division 11 of the Vehicle Code ("Operation of Bicycles"). (*Ibid.*) Moreover, the clause is more specific than the language of section 415 because it specifically addresses electric bicycles—section 415 merely addresses motor vehicles generally. "Under well-established principles of statutory interpretation, the more specific provision … takes precedence over the more general one. [Citations.] To the extent a specific statute is inconsistent with a general statute potentially covering the same subject matter, the specific statute must be read as an exception to the more general statute. [Citations.]" (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 857.) Finally, section 24016 also takes

precedence over section 415 as the later enactment. (See *Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310.)

The DMV argues that the clause "and an electric bicycle is not a motor vehicle" is limited by the specific carve-outs regarding financial responsibility, driver's licenses, registration, and license plates that are listed earlier in the same sentence, but it does not adequately explain its interpretation. Though it is not clear from its opposition, the DMV appears to be arguing that an electric bicycle "is not a motor vehicle" only in the context of insurance, licensing, and registration requirements—it still may be a "motor vehicle" in other contexts—but there is nothing in the plain language of the statute to support this reading. Indeed, as Beale points out, the word "and" suggests that this phrase was intended to be an independent clause. The DMV's interpretation would make the clause superfluous. The DMV's position conflicts with the basic principle of statutory interpretation that, "[w]here reasonably possible, we avoid statutory constructions that render particular provisions superfluous or unnecessary." (*Dix v. Super. Ct.* (1991) 53 Cal.3d 442, 459.)

Moreover, even if we were to accept the DMV's reading of section 24016 that an electric bicycle "is not a motor vehicle" only for purposes of "provisions of this code relating to financial responsibility, driver's licenses, registration, and license plate requirements," we have been given no basis for concluding that section 13353 cannot fit into one of these four enumerated categories. On its face, section 13353 presents as a provision "relating to … driver's licenses," as it is contained in division 6 of the Vehicle Code, which specifically pertains to driver's licenses, and it sets forth various circumstances under which a person's "privilege to operate a motor vehicle" may be suspended. As a result, even under the DMV's narrower interpretation of section 24016, there is still no support for the notion that an electric bicycle can be a "motor vehicle" for purposes of section 13353.

10

### 4. "Bicycle" (Vehicle Code Section 231)

The conclusion that an electric bicycle is not a motor vehicle is reinforced by the definition of "bicycle" in the Vehicle Code. Section 231 provides that "[a] bicycle is a device upon which a person may ride, propelled exclusively by human power, except as provided in Section 312.5, through a belt, chain, or gears, and having one or more wheels." (§ 231.) As noted above, the exception for section 312.5 refers to electric bicycles. Indeed, section 231 itself states, in its final sentence: "An electric bicycle is a bicycle." (§ 231.) Read together with section 24016, it would be difficult to conceive of a clearer statement regarding the classification of an electric bicycle as a "bicycle," rather than as a "motor vehicle."

The DMV cites *People v. Jordan* (1977) 75 Cal.App.3d Supp. 1, 13, in which the court held that a moped was a "motor vehicle" because it was "equipped with a motor and was capable of moving from place to place under its own power." That case is inapposite. A "moped" or "motorized bicycle" is expressly defined in Vehicle Code section 406. The *Jordan* court's discussion of mopeds has no bearing on electric bicycles, which are separately defined under sections 312.5 and 24016. (See *People v. Hatt* (2018) 20 Cal.App.5th 321, 326 ["A case is not authority for a proposition not considered. [Citation.]"].) As noted above, although Officer Corini's report characterized Beale's bicycle as a "motorized" bicycle, the APS hearing officer ultimately treated it as an electric bicycle, as did the trial court.

While it may well be the case that electric bicycles in some ways resemble mopeds more than they resemble non-electric bicycles, and that the use of electric bicycles potentially raises greater public safety concerns than the use of non-electric bicycles, it is not up to the court to disregard the current statutory scheme in favor of public policy arguments from the DMV. Any policy argument " 'is best directed to the Legislature, which can study the various policy and factual questions and decide what rules are best for society. Our role here is to interpret the statute[s] [as they are written], not to

11

establish policy.  The latter role is for the Legislature.' [Citation.]" (*L.A. County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1112.)

**D.** **Application of the Vehicle Code License Suspension Provisions to Bicycles, Including Electric Bicycles**

The DMV goes on to argue that even if electric bicycles are not motor vehicles, bicyclists are still subject to the same implied consent laws as motorists.  Thus, they should be subject to the same penalties as motorists for refusing to submit to a chemical test.  The DMV cites section 231, which states in relevant part: "A person riding a bicycle is subject to the provisions of this code specified in Sections 21200 and 21200.5." (§ 231.)  Section 312.5 also provides, in subdivision (b), that "[a] person riding an electric bicycle, as defined in this section, is subject to Article 4 (commencing with Section 21200) of Chapter 1 of Division 11." (§ 312.5, subd. (b).)  Section 21200 states, in relevant part: "A person riding a bicycle or operating a pedicab upon a highway has all the rights and is subject to all the provisions applicable to the driver of a vehicle by this division, including, but not limited to, provisions concerning driving under the influence of alcoholic beverages or drugs, and by Division 10 (commencing with Section 20000), Section 27400, Division 16.7 (commencing with Section 39000), Division 17 (commencing with Section 40000.1), and Division 18 (commencing with Section 42000), except those provisions which by their very nature can have no application." (§ 21200, subd. (a)(1).)

The DMV emphasizes the foregoing language (that a person riding a bicycle "has all the rights and is subject to all the provisions applicable to the driver of a vehicle by this division, including, but not limited to, provisions concerning driving under the influence of alcoholic beverages or drugs"), and it takes this to mean that the laws pertaining to driver's license suspensions apply equally to riders of bicycles and electric bicycles.  This ignores the structure of the Vehicle Code.  When section 21200 refers to

"provisions applicable … by this division," that means the provisions of division 11 ("Rules of the Road"). But the provisions of the Vehicle Code that pertain to refusals (section 23612) and administrative penalties for such refusals (section 13353) are contained in two other divisions—division 11.5 ("Sentencing for Driving While Under the Influence") and division 6 ("Drivers' Licenses"), respectively. Neither division 6 nor division 11.5 is mentioned in section 21200, nor are sections 13353 and 23612. Consequently, they are not necessarily made applicable to bicyclists by section 21200.

Moreover, we note that section 13353 requires not only that an arresting officer have "reasonable cause to believe" that a person was "driving a motor vehicle," but also that the officer have reasonable cause to believe that the person was doing so "in violation of Section 23140, 23152, or 23153." The DMV has not shown that any of these three Vehicle Code sections are applicable to the charges against Beale. Section 23140 addresses persons under the age of 21, which is plainly not relevant here, while sections 23152 and 23153 provide that it is unlawful for a person to drive a vehicle while under the influence of alcohol or a drug.

Section 21200.5 (which is not one of the enumerated provisions in section 13353) is the statute that governs riding a bicycle under the influence of alcohol or drugs: "Notwithstanding Section 21200, it is unlawful for any person to ride a bicycle upon a highway while under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug. Any person arrested for a violation of this section may request to have a chemical test made of the person's blood, breath, or urine for the purpose of determining the alcoholic or drug content of that person's blood pursuant to Section 23612, and, if so requested, the arresting officer shall have the test performed. A conviction of a violation of this section shall be punished by a fine of not more than two hundred fifty dollars ($250). Violations of this section are

13

subject to Section 13202.5." (§ 21200.5.)[4] As noted above, the legislative history of section 24016 indicates that the Legislature intended that electric bicycles be governed by article 4 of division 11 of the Vehicle Code, which includes sections 21200 and 21200.5. In contrast to the provisions applicable to the drivers of vehicles in sections 23152 and 23153, section 21200.5 limits the sentence for a violation of the code section to a monetary fine, with no possibility of jail time.[5]

The DMV argues that the use of the phrase "[n]otwithstanding Section 21200" at the beginning of section 21200.5 means that "all the rights and responsibilities for bicyclists set forth in Section 21200 apply unless contradicted by Section 21200.5." Even if we accept this argument, it does not change our ultimate conclusion, because we do not read section 21200 as incorporating the driver's license suspension provisions of section 13353, as section 21200 includes no reference to either section 13353 or section 23612. Nothing about the use of the term "notwithstanding" here signals that section 21200 should be read to do so.[6]

---

[4] Section 13202.5 provides for the suspension of driving privileges for certain violations involving controlled substances or alcohol, but only for individuals under the age of 21.

[5] We note that in *Velasquez v. Superior Court* (2014) 227 Cal.App.4th 1471, the Court of Appeal denied a writ of prohibition after a rider of a non-electric bicycle was charged with recklessly driving a "vehicle" under section 23103, following a collision with and serious injury of a pedestrian. Because it was dealing with a traditional bicycle, the court did not have occasion to review the statutes governing electric bicycles (including section 24016) in interpreting "vehicle" (as opposed to "motor vehicle"). Accordingly, we conclude that *Velasquez* does not compel us to construe "motor vehicle" to include electric bicycles. Moreover, section 23103 is not one of the enumerated statutes in section 13353. As a result, *Velasquez* does not alter our conclusion that section 13353 is inapplicable to riders of electric bicycles.

[6] Generally, "[t]he term 'notwithstanding' signals the Legislature's intent that a statute apply without prevention or obstruction by the other referenced statute. [Citation.]" (*People v. Elder* (2017) 11 Cal.App.5th 123, 140.) More specifically, the California Supreme Court has stated that the phrase " 'notwithstanding any other law,' " when appended to a statute, means that law, "when applicable, takes the place of

14

The DMV correctly notes that the Legislature has established both criminal and civil processes to address intoxicated driving, and that the existence of certain criminal penalties does not necessarily affect which administrative provisions might be available. (See *Gikas v. Zolin* (1993) 6 Cal.4th 841, 846 ["In addition to criminal sanctions, the Legislature has established administrative procedures whereby the DMV may suspend a person's driver's license for driving under the influence or with a specified blood-alcohol level."].) But the fact that an administrative process exists that can result in the suspension of a driver's license for a person driving a car under the influence of alcohol or drugs does not necessarily mean that the same process would apply to suspend the driver's license of a bicyclist who is not required to have a license in the first place.

The DMV argues that it makes sense to apply section 13353 to bicyclists because the law was intended to reduce driving under the influence and a "bicyclist with a driver's license could easily transition from a bicycle to a car." We are not persuaded by this policy argument, as it is untethered to the statutory language.

We conclude that the provisions of the Vehicle Code regarding the suspension of driver's licenses do not apply to bicyclists such as Beale and that his license therefore should not have been suspended.

E. *Due Process*

As a separate basis for reversal, Beale argues, as he did in the trial court, that the APS hearing violated his due process rights because the DMV combined the advocacy and adjudicatory roles in a single APS hearing officer. Because we conclude that Beale's driver's license was not subject to suspension as a matter of law, we do not need to reach the due process issue.

---

whatever law would otherwise determine defendant's sentence for the current offense. The language thus eliminates potential conflicts between alternative sentencing schemes." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 524.)

### III.   DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to grant the petition for writ of mandate.  Beale shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

_____

CHUNG, J.*

WE CONCUR:



_____

DANNER, ACTING P.J.



_____

BROMBERG, J.



*Beale v. Department of Motor Vehicles*
H052612

_____

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                                        Santa Clara
                                                    Superior Court No.:  23CV418048


Trial Judge:                                        The Honorable Mary E. Arand


Attorneys for Plaintiff and Appellant              Marsanne Weese
David Keith Beale:                                  Rose Mishaan


Attorneys for Defendant and Respondent             Rob Bonta,
Department of Motor Vehicles:                       Attorney General of California

                                                    Chris A. Knudsen,
                                                    Senior Assistant Attorney General

                                                    Kelsey Linnett
                                                    Supervising Deputy Attorney General

                                                    Joel Kosh
                                                    Deputy Attorney General


Beale v. Department of Motor Vehicles
H052612